Colorado Supreme Court Opinions || February 8, 2016

Colorado Supreme Court -- February 8, 2016
2016 CO 09. No. 13SC339. Laura A. Newman, LLC v. Roberts.

 The Supreme Court of the State of Colorado 
 2 East 14th Avenue • Denver, Colorado 80203

 2016 CO 9

 Supreme Court Case No. 13SC339 
 Certiorari to the Colorado Court of Appeals 
 Court of Appeals Case No. 11CA1851

 Petitioner: 
 Laura A. Newman, LLC d/b/a Herb’s and Herb’s Jazz & Blues,
 v.
 Respondent: 
 T. Lawton Roberts.

 Order Reversed 
 en banc

 February 8, 2016

 Attorneys for Petitioner:
 Dill Dill Carr Stonbraker & Hutchings, P.C.
 John J. Coates
 Kevin M. Coates

 Denver, Colorado

 Nathan Dumm & Mayer, P.C.
 Benjamin E. Tracy

 Denver, Colorado

 Attorneys for Respondent:
 The Law Office of Damian Stone, P.C.
 Damian S. Stone

 Denver, Colorado

 Metier Law Firm, LLC
 T. Thomas Metier, Esq.

 Fort Collins, Colorado

 Attorneys for Amicus Curiae Colorado Trial Lawyers Association 
 Darling Milligan Horowitz, P.C.
 Jason Wesoky

 Denver, Colorado

 Bachus & Schanker, LLC
 Adrienne M. Tranel

 Denver, Colorado

 JUSTICE EID delivered the Opinion of the Court.

 JUSTICE GABRIEL dissents, and JUSTICE HOOD joins in the dissent.

  

 ¶1        During jury selection in this civil case, the plaintiff challenged a juror for cause, but the trial court denied the challenge. The plaintiff then exercised one of his peremptory challenges to excuse the juror. On appeal, the court of appeals held that the trial court’s denial was erroneous. Roberts v. Newman, No. 11CA1851, slip op. at 3–4 (Colo. App. March 7, 2013). Then, relying on Blades v. DaFoe, 704 P.2d 317, 323 (Colo. 1985), in which we adopted a rule of automatic reversal for such errors in civil jury trials, the court reversed and remanded for a new trial without examining whether the error was harmless. Roberts, slip op. at 16–17.

 ¶2        Today we conclude that the same reasoning that led us to reject the automatic reversal rule in the criminal context, see People v. Novotny, 2014 CO 18, 320 P.3d 1194, requires us to reject the analogous rule in civil cases. As we detailed in Novotny, the automatic reversal rule in the criminal context rested on the assumption that impairment of the ability to shape the jury through peremptory challenges affected a “substantial right,” and, in fact, amounted to a due process violation. Id. at ¶¶ 14–16, 320 P.3d at 1199. Such impairment, we continued, was per se reversible error and not subject to harmless error review, which instructs a court to disregard any error that does not affect a substantial right. Id. at ¶ 14, 320 P.3d at 1199. As we traced in Novotny, however, subsequent developments in U.S. Supreme Court jurisprudence wiped away the foundations of that assumption, suggesting that an error regarding the ability to shape the jury is not a due process violation, and would affect a substantial right only if it substantially affected the outcome of the trial. Id. at ¶ 17, 320 P.3d at 1200. Today, we conclude that the automatic reversal rule of Blades, designed to remedy an error that impaired a litigant’s “substantial rights” and “right to a fair and impartial jury,” 704 P.2d at 322, 324, rests on the same—no longer viable—assumption.

 ¶3        Accordingly, we now overrule our cases to the contrary and hold that allowing a civil litigant fewer peremptory challenges than authorized, or than available to and exercised by the opposing party, does not by itself require automatic reversal. Instead, the reviewing court must determine whether the error substantially influenced the outcome of the case in accordance with the civil harmless error rule, C.R.C.P. 61. We therefore reverse the court of appeals and remand the case for further proceedings consistent with this opinion.

 I.

 ¶4        This case arises from an altercation between plaintiff-respondent, T. Lawton Roberts, and several unidentified patrons of Herb’s, a bar owned and operated by Newman, LLC. Although the sequence of events is disputed, the parties generally agree that Roberts suffered severe injuries during the altercation, which occurred in a public parking lot across the back alley from Herb’s. Roberts sued Newman, LLC and the bar’s landlord, L&H. He also sued Newman, LLC’s managing members, Laura Newman and Holly Morrison, arguing that they could be held individually responsible for any liability attributed to Newman, LLC under a theory of equitable ownership and piercing the corporate veil. Roberts stated several claims for relief against all four defendants, including negligence and a claim under the Premises Liability Act (“PLA”), § 13-21-115, C.R.S. (2015). Only Newman, LLC is a party to this proceeding.

 ¶5        During jury selection, Roberts challenged three potential jurors for cause: Juror B., Juror D., and Juror G. Of relevance here, Juror B. stated that she had “a concern about being impartial,” because she, like Newman and Morrison, was a female business owner. Juror D. and Juror G. also indicated concerns about impartiality.

 ¶6        The trial court denied the challenges for cause as to all three prospective jurors. It concluded that none had indicated an unwillingness or inability to follow the court’s instructions and that the jurors had been rehabilitated. The trial court also noted that some of the jurors might have been claiming bias simply to avoid serving on the jury. Roberts then used three of his five peremptory challenges to remove the previously challenged jurors. He ultimately exercised all five challenges.

 ¶7        The trial court granted a directed verdict for all the defendants on Roberts’s negligence claim on the grounds that they had no duty to protect him. It also directed a verdict on all remaining claims against L&H after determining that the evidence was insufficient to prove either that it was a landowner under the PLA or that it could be vicariously liable for the claims against Newman, LLC. Because Newman and Morrison’s individual liability under the PLA was equitable and contingent upon a verdict against Newman, LLC, the court reserved judgment on the individual claims against them pending the jury’s verdict with respect to Newman, LLC. The case was therefore submitted to the jury solely on Roberts’s PLA claim against Newman, LLC, and the jury returned a verdict in the company’s favor.

 ¶8        On appeal, Roberts contested the trial court’s denial of his challenges for cause, arguing that the trial court abused its discretion.[1] The court of appeals agreed as to Juror B. It held that Juror B. “had a long-held bias in favor of female business owners like defendants” and had made it clear that she could not be impartial. Roberts, slip op. at 12, 13–14. Having determined that the trial court erred in denying the for-cause challenge as to Juror B., the court of appeals declined to rule on the challenges to Juror D. and Juror G. Id. at 3–4.

 ¶9        Turning to the remedy, the court of appeals noted that “[i]f a trial court abuses its discretion in denying a challenge for cause, removing the prospective juror by peremptory challenge does not render the error harmless.” Id. at 8 (citing Blades, 704 P.2d at 324; People v. Macrander, 828 P.2d 234, 244 (Colo. 1992)). It held that under Blades, “when a ‘challenge for cause should have been granted . . . the court’s failure to do so constitutes reversible error.’” Id. at 16 (quoting Blades, 704 P.2d at 323) (omission in original). Pointing to this court’s earlier holdings that “an improperly denied challenge for cause, requiring use of a peremptory challenge, was reversible error,” the court of appeals reversed and remanded for a new trial. Id. at 17 (citing Safeway Stores, Inc. v. Langdon,532 P.2d 337, 338–39 (Colo. 1975)). It did not perform any analysis to determine whether the error was harmless.

 ¶10        Newman, LLC now petitions this court and asks us to overrule Blades and reject the automatic reversal rule in civil cases as we recently did in the criminal context. See Novotny, ¶ 27, 320 P.3d at 1203.[2] We conclude that the same reasoning that led us to reject the automatic reversal rule in the criminal context in Novotny requires us to reject the analogous rule in civil cases. Accordingly, we now overrule our prior holdings to the contrary and hold that allowing a civil litigant fewer peremptory challenges than authorized, or than available to and exercised by the opposing party, does not by itself require automatic reversal. Instead, the reviewing court must determine whether the error substantially influenced the outcome of the case in accordance with our harmless error rule. See C.R.C.P. 61. We therefore reverse the court of appeals and remand the case for further proceedings consistent with this opinion.

 II.

 ¶11        Petitioner does not dispute the court of appeals’ holding that the trial court abused its discretion in denying Roberts’s for-cause challenge against Juror B. Therefore, we need to consider only whether this erroneous ruling requires automatic reversal and a new trial.

 ¶12        The right to peremptory and for-cause challenges in civil trials is governed by our rules of civil procedure. See C.R.C.P. 47(e), (h). Under Rule 47(e), challenges for cause may be exercised only on the basis of one or more of several statutorily-prescribed grounds. C.R.C.P. 47(e)(1)–(7). Peremptory challenges, on the other hand, “may, within constitutional limitations, be exercised without regard to or specification of any reason whatsoever.” Novotny, ¶ 10; see also C.R.C.P. 47(h).

 ¶13        Prior to our decision in Novotny, we recognized a rule of automatic reversal in both criminal and civil cases “for any erroneous ruling on a challenge for cause adversely impacting [a party’s] ability to shape the jury through peremptory challenges.” Novotny, ¶ 14, 320 P.3d at 1199. This rule stemmed from our holding in Denver City Tramway Co. v. Kennedy, 117 P. 167, 169 (Colo. 1911), a civil case, in which we imposed a rule of automatic reversal where the erroneous denial of a for-cause challenge compelled a party to exhaust one of its peremptory challenges on the juror. In that case, we reasoned $$[h]ad the objection been sustained, the personnel of the jury would have been different. As to what effect this might or might not have had upon the ultimate result of the trial is a matter of pure conjecture and is not for the trial court, or even this court, to make a guess at. Id.Thus, we determined that the impairment of a party’s ability to shape the jury through peremptory challenges required reversal. Id.

 ¶14        We revisited the automatic reversal rule in the civil context in Blades, 704 P.2d at 321, where we again recognized that an impairment of a party’s ability to shape the jury required reversal.[3] In Blades, the trial court committed two errors regarding peremptory challenges. First, it allowed the plaintiffs the four challenges permitted by C.R.C.P. 47(h), but then erroneously allowed the defendants six peremptories, reasoning incorrectly that an increase was justified by the fact that there were multiple defendants. Id. at 321. It also made the same error at issue in Kennedy, improperly denying the plaintiffs’ for-cause challenge and thereby requiring them to exercise one of their peremptories to remove the juror. Id. at 324–25. Thus, we concluded that, “[i]n effect, the plaintiffs exercised only three peremptory challenges as compared to the defendants’ six.” Id. at 326.

 ¶15        Although we did not cite Kennedy, we cited another case of that era, Butler v.  Hands, 95 P. 920, 921 (Colo. 1908), as well as Swain v. Alabama, 380 U.S. 202, 220 (1965), to emphasize that “the right to exercise peremptory challenges . . . is a valuable right” that “secur[es] a more impartial and better qualified jury.” Blades, 704 P.2d at 320. Indeed, we viewed this right as so important that it qualified as “a substantial right . . . not intended as a remedy for trial court errors,” id. at 325, and cited two criminal cases that had reached this same conclusion, id. (citing Harris v. People, 160 P.2d 372, 377 (Colo. 1945)); id. at 322 (citing Bustamante v. People, 297 P.2d 538, 540 (Colo. 1956)); see also Crim. P. 52(a) (“Any error . . . which does not affect substantial rights shall be disregarded.”) (emphasis added). Accordingly, we held that, when a trial court erroneously impairs a party’s ability to shape the jury, it “abridges a litigant’s right to a fair and impartial jury” and therefore commits reversible error. Id. at 324.

 ¶16        Soon after Blades, we formally extended the automatic reversal rule to the criminal context in Macrander, 828 P.2d at 243–44. Describing the reasoning of Kennedy as “unassailable” and referencing Blades, we observed that when a defendant has been forced to correct a trial court’s erroneous denial of a for-cause challenge by exercising a peremptory challenge, the “effect of the trial court’s erroneous ruling . . . is to impair the defendant’s ability to change the ultimate composition of the jury selected to try the case.” Id. at 243, 244. We emphasized that the “opportunity to exercise the [peremptory] challenge” is “one of the most important rights secured to an accused,” echoing similar observations we made in Blades. Id. at 243 (quoting Pointer v. United States, 151 U.S. 396, 408 (1894)). Thus, we reasoned, an improper denial of a challenge for cause in a criminal case “affects a substantial right of the defendant and cannot be deemed harmless error.” Id. at 244 (emphasis added).

 ¶17        Finally, we extended the automatic reversal rule of Macrander to the corollary situation in which the trial court erroneously grants a challenge made by the prosecution. In People v. Lefebre, 5 P.3d 295, 303 (Colo. 2000), we relied heavily on Blades, Bustamante, and Macrander to conclude that “while the defendant may have been able to exercise his full complement of peremptory challenges, the prosecution nonetheless enjoyed an unfair tactical advantage over the defendant in shaping the jury.” We observed that “[a]llowing the prosecution . . . to craft a jury predisposed toward its position by removing more jurors than the defendant was able to remove hardly achieves th[e] critical purpose” of a fair and impartial jury as embraced by Swain. Id. at 305. Continuing to emphasize the constitutional dimensions of the case, we concluded that such impairment of the defendant’s ability to shape the jury caused him to “suffer[] a Fourteenth Amendment due process violation” and thus violated “substantial rights.” Id. at 304, 308. Because such impairment “is inherently prejudicial to the defendant,” we continued, it is not subject to harmless error review but instead warrants automatic reversal and a new trial. Id. at 308.

 ¶18        Most recently in Novotny, we held that changes in the understanding of the nature of peremptory challenges, coupled with changes in harmless error analysis more generally, undermined our reasoning in Macrander, Lefebre, and Bustamante to such an extent that the automatic reversal rule, at least insofar as it was adopted in the criminal context, could no longer be followed. Novotny, ¶ 17, 320 P.3d at 1200. The question in this case is whether the automatic reversal rule in the civil context survives Novotny. We hold that it does not.

 ¶19        As we traced in Novotny, our cases recognizing the automatic reversal rule in the criminal context rested on the assumption that any impairment of the ability to shape the jury affected a “substantial right” and was therefore not subject to harmless error review. Id. at ¶¶ 14–16, 320 P.3d at 1200–02. In fact, we believed such impairment amounted to a due process violation in and of itself. See Lefebre, 5 P.3d at 304 (holding that defendant “suffered a Fourteenth Amendment due process violation” where the court denied him “parity with the prosecution in the exercise of peremptory challenges”); Macrander, 828 P.2d at 238 (noting that “[a] fair trial in a fair tribunal is a basic requirement of due process” and “the right to challenge a juror for cause has been recognized as an integral part of a fair trial”); see also Novotny, ¶ 19, 320 P.3d at 1200 (“[W]e have, in the past . . . merely categorized the affected right as ‘substantial’ based on the significance of the right itself.” (citing Macrander, 828 P.2d at 244; Lefebre, 5 P.3d at 304–05)).

 ¶20        In Novotny, however, we made clear that this assumption is no longer tenable. First, we pointed out that the U.S. Supreme Court had expressly rejected our understanding that any impairment of a substantial right would insulate an error from harmless error review. We observed that the Court, in addressing the nearly identical federal counterpart to our Rule 52(a),[4] had stated that the federal rule “admits of no broad exceptions to its applicability. Any assumption that once a ‘substantial right’ is implicated it is inherently ‘affected’ by any error begs the question raised by [federal] Rule 52(a).” Novotny, ¶ 19, 320 P.3d at 1201 (quoting United States v. Lane, 474 U.S. 438, 448 n.11 (1986)). As such, it was clear to us that “reversal for trial error, based solely on the significance, or substantiality, of the affected right, can no longer be sustained.” Id. at ¶ 26, 320 P.3d at 1203. Instead, under modern harmless error analysis, a “substantial right” is affected only when the error impacts the outcome of the trial. As we put it, the harmless error standard of Crim. P. 52(a), “which mandates that error be disregarded unless it affects substantial rights, requires some outcome-determinative analysis, evaluating the likelihood that the outcome of the proceedings in question were affected by the error.” Id. at ¶ 20, 320 P.3d at 1201 (citing Krutsinger v. People, 219 P.3d 1054, 1063 (Colo. 2009)).

 ¶21        We also noted that although Crim. P. 52(a) had long established that any error not affecting substantial rights should be disregarded, it was not until more recently that the U.S. Supreme Court made clear that there was only a very limited class of fundamental constitutional errors—called “structural errors”—that would defy harmless error analysis. Id. at ¶¶ 18, 20, 320 P.3d at 1200, 1201. The concept of structural error “comprehends only those defects affecting the framework within which the trial proceeds—errors that infect the entire trial process and necessarily render a trial fundamentally unfair—rather than simply errors in the trial process itself.” Id. at ¶ 21, 320 P.3d at 1201. We then observed that the Court had expressly disavowed our earlier understanding, based on cases such as Swain and Pointer, that impairment of the defendant’s ability to shape the jury was a due process violation in and of itself, insulated from harmless error review. Id. at ¶ 22, 320 P.3d at 1202. The Court viewed such suggestions in its earlier case law, we pointed out, as the product of pre-modern harmless error analysis. Id.

 ¶22        Following the Court’s lead, we held that “allowing a defendant fewer peremptory challenges than authorized, or than available to and exercised by the prosecution, does not, in and of itself, amount to structural error.” Id. at ¶ 27, 320 P.3d at 1203. At least in the criminal context, therefore, we concluded that the theoretical support undergirding our automatic reversal rule, founded on a violation of a “substantial right,” had fallen away. Id. at ¶¶ 17–22, 27, 320 P.3d at 1200–02, 1203.

 ¶23        The same theoretical support has fallen away in the civil context. As developed above, our decision in Blades rests on the assumption, identical to that in the criminal context, that the “right to exercise peremptory challenges is a substantial right,” 704 P.2d at 325, which, if impaired, amounts to a due process violation requiring automatic reversal, id. at 320, 324 (citing Swain and stating that the peremptory challenge is a “valuable right” and holding that impairment of the ability to shape the jury “abridges a litigant’s right to a fair and impartial jury and thus constitutes reversible error”). But, as explained above, impairment of the ability to shape a jury is no longer considered a due process violation, and, more generally, a violation of a substantial right occurs only where the error has had a substantial impact on the outcome of the case. Thus, based on Novotny’s reasoning, support for the automatic reversal rule in the civil context has eroded away.

 ¶24        It is true that civil law harmless error review did not undergo all the twists and turns taken by criminal harmless error doctrine. No concept of “structural error,” in those terms, has been recognized in the civil arena. Instead, errors in the civil context have long been subject to harmless error review under Rule 61, adopted in 1937, which provides that “[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.” C.R.C.P. 61. But we have held that, under Rule 61, an error affects a substantial right only if “it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.” Bly v. Story, 241 P.3d 529, 535 (Colo. 2010) (emphasis added) (citation omitted). This formulation thus closely tracks our explanation of error requiring reversal in the criminal context, where reversal is warranted only for structural errors, which, by definition, “infect the entire trial process and necessarily render a trial fundamentally unfair,” Novotny, ¶ 21, 320 P.3d at 1201, or for trial errors that affect the outcome of the case, id. at ¶ 17, 320 P.3d at 1200 (“[R]eversal for trial error [is warranted] only when that remedy is dictated by an appropriate outcome-specific analysis.”). And as we pointed out in Novotny, we did not use the term “structural error” in the criminal context in Macrander or Lefebre and instead held, as we did in the civil context in Blades, that the error affected a “substantial right” of the defendant. Novotny, ¶ 16, 320 P.3d at 1199.

 ¶25        More fundamentally, as demonstrated above, our automatic reversal rules in the criminal and civil contexts did not develop independently of one another; instead, their development was substantially intertwined. Blades, a civil case, relied on Bustamante and Harris, both criminal cases. Macrander, a criminal case, relied on Kennedy and Blades, both civil cases. And Lefebre, a criminal case, relied on Bustamante and Macrander, criminal cases, as well as Blades, a civil case. We see no reason that justifies preserving the civil strand of the automatic reversal rule now that the criminal strand has been discarded. Indeed, it would make little sense to give peremptory challenges greater protection in the civil context, where one’s liberty is not at stake. See Macrander, 828 P.2d at 243 (noting that the reasoning of Kennedy applies “with even greater force to a felony prosecution where the stakes are considerably higher than those in the ordinary civil case”); Moreles-Guevera v. Koren, 2014 COA 89, ¶ 30, __ P.3d __ (noting that giving peremptory challenges greater protection in the civil context than in the criminal context creates an “incongruity in the law”).

 ¶26        For these reasons, to the extent that our civil cases, including Kennedy, Blades, and Safeway, require automatic reversal, we overrule them and hold that allowing a civil litigant fewer peremptory challenges than authorized, or than available to and exercised by the opposing party, does not by itself require automatic reversal. Instead, the reviewing court must apply an outcome-determinative analysis, which asks whether the error substantially influenced the outcome of the case. We remand this case to the court of appeals for this determination.

 III.

 ¶27        Accordingly, we reverse the court of appeals and remand the case for further proceedings consistent with this opinion.

 [1] Roberts also challenged the trial court’s rulings as to the directed verdicts and various evidentiary motions. The court of appeals reversed the trial court’s grant of a directed verdict on Roberts’s PLA claim against L&H and remanded for a new trial on that claim. It affirmed the remaining rulings. This portion of the case is not before us.

 [2] We granted certiorari to review the following issue:

 Whether the automatic reversal rule in civil jury trials announced in Blades v. DaFoe, 704 P.2d 317 (Colo. 1985), should be overruled.

 [3] We also held in the interim, without analysis, that a trial court’s erroneous denial of a plaintiff’s peremptory challenge “was reversible error.” Safeway Stores, 532 P.2d at 339.

 [4] Fed. R. Crim. P. 52(a) states that “[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.” Crim. P. 52(a) is identical except that it substitutes “which” for “that” and “shall” for “must.”

  

 JUSTICE GABRIEL dissents, and JUSTICE HOOD joins in the dissent.

 
  

 JUSTICE GABRIEL, dissenting.

 ¶28        The majority overrules over one hundred years of precedent and holds that allowing a civil litigant fewer peremptory challenges than authorized, or than available to and exercised by the opposing party, does not by itself require automatic reversal. To reach this conclusion, the majority relies principally on our decision in People v. Novotny, 2014 CO 18, 320 P.3d 1194. Because I believe that Novotny was wrongly decided and that the premise of the majority’s holding today is flawed, I respectfully dissent.

 I. Analysis

 ¶29        The majority concludes that the same reasoning that led the Novotny court to reject the automatic reversal rule in the criminal context requires the majority to reject the analogous rule in civil cases. For the reasons set forth by Justice Hood in his separate opinion in Novotny, ¶¶ 28–56, 320 P.3d at 1203–08 (Hood, J., concurring in part and dissenting in part), which reasons I need not repeat here, I believe that Novotny was wrongly decided. I therefore disagree with the majority’s analysis in this case.

 ¶30        Moreover, the majority suggests that the issue before us is whether allowing a civil litigant fewer peremptory challenges than are authorized, or than are available to and exercised by the opposing party, alone mandates automatic reversal. See maj. op. at ¶ 3. I disagree with that premise. In my view, the question before us is whether the right to exercise peremptory challenges is a substantial right, such that the impairment of that right requires reversal. See C.R.C.P. 61 (noting that a court at every stage of a proceeding “must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties”). Unlike the majority, I believe that the right to exercise peremptory challenges is a substantial right.

 ¶31        Rule 47 of the Colorado Rules of Civil Procedure provides for both challenges for cause and peremptory challenges. Indeed, C.R.C.P. 47(h) provides that each party “shall” be entitled to a certain number of peremptory challenges. In my view, requiring a party to use a peremptory challenge to correct a trial court’s error in denying a challenge for cause effectively deprives the party of both the peremptory challenge and what should have been a successful challenge for cause and necessarily affects that party’s substantial rights.

 ¶32        Moreover, for over one hundred years, our cases have recognized that the allowances of both challenges for cause and peremptory challenges are essential to the fairness of a jury trial. See Blades v. DaFoe, 704 P.2d 317, 320 (Colo. 1985) (collecting authorities). Indeed, in Blades, we said, “[T]he right to exercise peremptory challenges created by our rule is a valuable right and an effective means of securing a more impartial and better qualified jury.” Id.; see also People v. Harlan, 8 P.3d 448, 459–60 (Colo. 2000) (“We have previously held that affording a criminal defendant full use of his allotted peremptory challenges is an intrinsic part of securing a balanced and impartial jury . . . . We [have] observed that ‘[t]he peremptory challenge serves the purpose of providing both the defense and the prosecution with a greater opportunity to secure a balanced and impartial jury by rejecting a limited number of prospective jurors without cause.’ . . . ‘[T]he opportunity to exercise the [peremptory] challenge has been described as ‘one of the most important rights secured to an accused,’ the erroneous deprivation of which ‘must be condemned.’’”) (quoting People v. Macrander, 828 P.2d 234, 242–43 (Colo. 1992), overruled by Novotny, ¶ 27, 320 P.3d at 1203) (other citations omitted), overruled on other grounds by People v. Miller, 113 P.3d 743 (Colo. 2005); cf. Morrison v. People, 19 P.3d 668, 671 n.3 (Colo. 2000) (“Whether the defendant suffered an impairment of his substantial right to use peremptory challenges and whether his right to an impartial jury was violated are logically independent questions.”).

 ¶33        I am not aware of any changes in law, policy, or circumstances that justify our jettisoning a century of precedent that has worked well to ensure fair and impartial juries, at little cost to the judicial system or litigants. See People v. Porter, 2015 CO 34, ¶ 23, 348 P.3d 922, 927 (noting that the doctrine of stare decisis requires the supreme court to follow pre-existing rules of law but that the court will depart from stare decisis when it is “convinced that the precedent was originally erroneous or is no longer sound given changed conditions, and more good than harm will come from departing from it”); see also Novotny, ¶ 25, 320 P.3d at 1202 (noting that in deciding whether to depart from precedent, a court will consider the practical workability of the decision, the extent to which a departure would work a hardship or inequity on those who have relied on the precedent, and whether the principles on which the precedent is based (or related legal principles) have developed in such a way as to leave the prior ruling without support).

 ¶34        And in reaching its conclusion, the majority alters our long-held understanding of errors that affect substantial rights. Specifically, the majority correctly observes that under C.R.C.P. 61, “[a]n error affects a substantial right when it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.” Banek v. Thomas, 733 P.2d 1171, 1178 (Colo. 1986) (emphasis added). The majority further states, however, that under “modern harmless error analysis,” subject to the “very limited class of fundamental constitutional errors” called structural errors, a substantial right is affected only when the error impacts the outcome of the trial. Maj. op. at ¶¶ 20–21. In my view, such a construction misconstrues C.R.C.P. 61 and erroneously subsumes the notion of a trial’s basic fairness into the question of whether a trial error affected the trial’s outcome. I reach this conclusion for several reasons.

 ¶35        First, as the majority acknowledges, no concept of structural error, in those terms, has been recognized in the civil arena. Id. at ¶ 24. Accordingly, I perceive no basis for reading such a limitation into C.R.C.P. 61.

 ¶36        Second, as the majority states, only a “very limited class of fundamental constitutional errors” has been deemed structural, id. at ¶ 21, and I am not persuaded that this limited class covers the range of errors that can impair the basic fairness of a trial. Rather, in my view, certain trial errors can impair the basic fairness of a trial even if they are not within the limited class of errors that we have deemed “structural” and even when a party cannot show that the errors impacted the outcome of the trial.

 ¶37        This case well illustrates this distinction. Here, Roberts challenged three jurors for cause, and the trial court denied all three challenges, requiring Roberts to exercise three of his five peremptory challenges. The division of the court of appeals concluded that one of Roberts’s challenges was erroneously denied and that in light of the automatic reversal rule, it did not need to address the other two. Roberts v. Newman, No. 11CA1851, slip op. at 3–4 (Colo. App. Mar. 7, 2013) (not selected for publication). But what if all three challenges for cause were erroneously denied? Or what if a party is required to use all of its peremptory challenges to correct a trial court’s erroneous denials of challenges for cause? The majority would perceive no problem, as long as no biased juror was ultimately seated. In my view, however, the opposing party in such a scenario would enjoy a substantial tactical advantage, both in selecting the jury and throughout the trial. I cannot agree that such a process could reasonably be construed as fair, even though the error has not been deemed “structural.” See, e.g., Neder v. United States, 527 U.S. 1, 8 (1999) (noting the types of constitutional errors that have been deemed structural).

 ¶38        This is particularly true in a context like this, where, as we recognized over a century ago, the effect of errors like those at issue on the ultimate result of a trial “is a matter of pure conjecture and is not for the trial court, or even this court, to make a guess at.” Denver City Tramway Co. v. Kennedy, 117 P. 167, 169 (Colo. 1911). Indeed, our inability to assess the impact of such errors is precisely why we adopted the automatic reversal rule in the first place, and I have seen nothing to support our now shifting course and requiring a party to prove what we for over a century have said could not be proved. See also Novotny, ¶¶ 43–46, 320 P.3d at 1206 (Hood, J., concurring in part and dissenting in part) (noting that the type of error at issue here, “by its nature, defies harmless error analysis,” and that requiring a party to prove harm creates a “virtually impossible” standard, particularly given settled law restricting inquiry into the validity of a verdict).

 II. Conclusion

 ¶39        As the majority recognizes, the goal of challenges for cause and peremptory challenges is to ensure a fair and impartial jury. We have long recognized that such challenges, working together, assure that result. Yet today, the majority adopts a rule that undermines both challenges for cause and peremptory challenges. Because the application of this rule here impairs Roberts’s substantial rights and the goal of a fair and impartial jury, I respectfully dissent.

 I am authorized to state that JUSTICE HOOD joins in this dissent.

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Supreme Court Opinions || February 8, 2016

Back