23CA1962 Marriage of Danks 03-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1962
Weld County District Court No. 17DR30496
Honorable Shannon D. Lyons, Judge

---

In re the Marriage of

Megan Jo Dell,

Appellant,

and

Raymond B. Danks,

Appellee.

---

ORDERS AFFIRMED

Division IV
Opinion by JUDGE KUHN
Harris and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

---

Sherman & Howard L.L.C., Jordan M. Fox, Hannah R. Taylor, Denver, Colorado, for Appellant

Antommaria & Rodionov, LLC, Amy M. Antommaria, Greeley, Colorado, for Appellee

¶ 1    In this dissolution of marriage case between Megan Jo Dell (mother) and Raymond B. Danks (father), mother appeals the district court's order granting father's emergency motion to restrict parenting time and ordering shared decision-making responsibility. Mother also appeals the order denying her motion for post-trial relief under C.R.C.P. 59 and C.R.C.P. 60. We affirm.

## I.    Background

¶ 2    This matter arose amidst ongoing, contentious post-dissolution litigation. The parties divorced in September 2018 and have two young children.

¶ 3    The court's initial orders designated mother the sole decision-maker and established equal parenting time for each party. At the time of dissolution, mother lived in New Mexico while father lived in Colorado. However, mother moved to Oregon during the course of this case — without the district court's consent — where she currently resides. Father remains in Colorado. The parties' parenting time schedule proved to be impractical, and the parties agreed to change father's parenting time to ten consecutive overnights per month in Colorado. Despite this change, the parties continued to struggle with parenting time transitions. As a result,

1

the court again modified the parenting time schedule to align with the children's school calendar in Oregon, giving mother the majority of the year and father the summer, with occasional school year visits.

¶ 4     The latest dispute arose after father exercised parenting time with the children in late February through March of 2023.  Upon their return to Oregon, one of the children told a teacher that he was confined while at his father's house.  The teacher made a mandatory report of child abuse.  After receiving the report, the Oregon Department of Human Services began an investigation and referred the matter to Juliette's House, a child advocacy center in Oregon.  Juliette's House separately interviewed each of the children and issued preliminary evaluation reports: a two-page recommendation for each child, dated May 3 and 10, as well as a ten-page medical exam and forensic interview report for each child, dated May 10 and 15.  The reports recommended that the children have no unsupervised contact with father until the investigation concluded.

¶ 5     The day after the last report was issued, mother filed a status report that included the two-page recommendations and a request

for the court to relieve her from the obligation of confirming the children's travel to Colorado for their scheduled June 17 parenting time with father. The district court denied this request.

¶ 6 Then on June 14, the district court held a status conference during which mother asked the court to permit her Oregon counsel to appear. However, the Oregon counsel had not been admitted pro hac vice, so the court denied the request and reiterated that the current parenting time order — that included a scheduled visit on June 17 — remained in effect.

¶ 7 During this status conference, mother did not inform the court that she intended to file an emergency motion to restrict parenting time in the Oregon circuit court. But the next day, she did exactly that. The Oregon court issued an order — the same day — restricting father's parenting time. Due to these events, the children did not visit their father at the start of his scheduled parenting time on June 17.

¶ 8 Subsequent to the Oregon court order, the parties filed cross-motions to restrict parenting time in the Colorado district court. Mother claimed that father physically abused the children, while father claimed that mother coached the children to make the

abuse allegations, placing them in emotional danger.  The district court held another hearing on June 27.  Two days later, it issued a thirty-four-page order granting father's motion to restrict mother's parenting time and withdrawing sole decision-making authority from mother.  Mother filed a post-hearing motion to reconsider.  The district court denied the motion, and mother appealed.

## II.    Analysis

¶ 9    Mother contends that the district court erred by (1) changing the children's residential parent from mother in Oregon to father in Colorado; (2) changing the decision-making authority from being solely mother's to shared; and (3) failing to properly apply section 14-10-127.5, C.R.S. 2023, known as "Kayden's Law."[1]  We address the first two issues together due to their related facts and law before turning to the application of Kayden's Law.

---

[1] Throughout this opinion, we refer to the version of Kayden's Law that was in effect when the district court issued its order.  The General Assembly has since amended section 14-10-127.5, C.R.S. 2023.  Ch. 344, sec. 6, § 14-10-127.5, 2024 Colo. Sess. Laws 2342-45.

## A. Standard of Review and Applicable Law

¶ 10   "We review [the district court's] findings of fact for clear error, 'meaning that we won't disturb such findings if there is any evidence in the record supporting them.'" *Bartenders & More v. Colo. Dep't of Lab. & Emp.*, 2023 COA 123, ¶ 13 (quoting *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 24).

¶ 11   "The determination of parenting time is a matter within the sound discretion of the trial court, taking into consideration the child's best interests and the policy of encouraging the parent-child relationship." *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007) (citing *In re Marriage of England*, 997 P.2d 1288, 1290 (Colo. App. 1999)).  Indeed, "every presumption that supports upholding the court's decision will be exercised." *Id.*  Further, on a motion to restrict parenting time, "[c]redibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the [district] court." *In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (second alteration in original) (quoting *In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo.

App. 2003)). A "court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or based on a misapplication of the law." *Adams Cnty. Hous. Auth. v. Panzlau,* 2022 COA 148, ¶ 17 (quoting *Black v. Black,* 2020 COA 64M, ¶ 118).

¶ 12    However, "we review the legal conclusions the trial court drew from [its factual] findings de novo." *In re Marriage of de Koning,* 2016 CO 2, ¶ 17. And we review a district court's interpretation of a statute de novo. *Bodelson v. City of Littleton,* 36 P.3d 214, 216 (Colo. App. 2001).

¶ 13    The party asserting an error has the burden of showing that the error wasn't harmless. *Moody v. Corsentino,* 843 P.2d 1355, 1375 (Colo. 1993). An error is harmless if it "does not affect the substantial rights of the parties." C.R.C.P. 61. An error affects a party's substantial rights "only if it can be said with fair assurance that [it] substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *Stockdale v. Ellsworth,* 2017 CO 109, ¶ 32 (quoting *Laura A. Newman, LLC v. Roberts,* 2016 CO 9, ¶ 24).

¶ 14    Section 14-10-129, C.R.S. 2024, governs the modification of parenting time. "[T]he court may make or modify an order granting or denying parenting time rights whenever such order or modification would serve the best interests of the child." § 14-10-129(1)(a)(I). However, "[t]he court shall not restrict a parent's parenting time rights unless it finds that the parenting time would endanger the child's physical health or significantly impair the child's emotional development." § 14-10-129(1)(b)(I).

## B.    Relocation and Decision-Making

¶ 15    Mother contends that the district court erred by changing the children's primary residence to Colorado and altering the decision-making responsibility from her sole authority to a shared arrangement. To support these contentions, mother argues that the court (1) incorrectly applied the modification of parenting time statute, section 14-10-129, by not considering the harm of relocation to the children; (2) incorrectly relied on a parental evaluation report and lacked sufficient evidence to make a finding of coaching; (3) made improper credibility findings; and (4) applied its personal knowledge to the matter. We address each argument in turn.

### 1. Application of the Modification of Parenting Time and Decision-Making Statutes

¶ 16    Mother argues that the district court failed to consider the harm caused by the children's relocation from Oregon, where they lived with her, to Colorado, where they would live with father. But because the district court did consider the harm of the change in environment, we disagree.

¶ 17    In its order granting father's motion to restrict mother's parenting time, the district court primarily relied on section 14-10-129(1)(b)(I), which governs the restriction of a parent's parenting time rights. In applying the statute, the court made findings of endangerment, ordered supervised visits for mother, substantially changed the parties' allocated parenting time, and ordered joint decision-making.

¶ 18    Mother does not argue that the court incorrectly applied section 14-10-129(1)(b)(I). However, she contends that the district court failed to apply two other controlling statutory provisions: section 14-10-129(2)(d), which addresses modification of parenting time, and section 14-10-131(2)(c), C.R.S. 2024, which addresses modification of decision-making responsibility.

¶ 19    Father argues, in response, that the court's determination is only governed by section 14-10-129(1)(b)(1) and that no other statutory provisions apply.  We disagree.  Father cites no case law in support of this argument, and the plain language of section 14-10-129(2)(d) indicates it clearly applies in this matter along with the requirements of section 14-10-129(1)(b)(1).

¶ 20    Section 14-10-129(2)(d) provides that

> [t]he court shall not modify a prior order concerning parenting time that substantially changes the parenting time as well as changes the party with whom the child resides a majority of the time unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or the party with whom the child resides the majority of the time and that the modification is necessary to serve the best interests of the child.  In applying these standards, the court shall retain the parenting time schedule established in the prior decree unless:
>
> . . . .
>
> (d) The child's present environment endangers the child's physical health or significantly impairs the child's emotional development and the *harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.*

(Emphasis added.)

¶ 21 In addition, section 14-10-131(2)(c) contains a near identical requirement. Under that paragraph, one basis for a court to modify decision-making responsibility is when it finds that "[t]he retention of the allocation of decision-making responsibility would endanger the child's physical health or significantly impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." § 14-10-131(2)(c).

¶ 22 Mother argues that the district court erred by failing to make "any findings regarding the harm likely to be caused from removing the children from their primary caregiver." However, her argument overlooks a key section of the district court's order that specifically addressed these required findings: "In addition, [the court] makes the further finding that retaining allocation of decision-making authority in mother would significantly impair the children's emotional development and the harm likely to be caused by a

change of environment is currently outweighed by the advantage of a change in the children's current environment."[2]

¶ 23    The district court made the findings required by sections 14-10-129(2)(d) and 14-10-131(2)(c).[3]  We thus discern no error, and mother's argument fails.

### 2. The Parental Evaluation Report and Sufficiency of the Evidence

¶ 24    Mother next argues that the district court improperly took judicial notice of a report created by Dr. Mark Kilmer, and that without that report there was no evidence to support the district

---

[2] While it appears that the district court accidentally collapsed its statutory citations to section 14-10-129(2)(d), C.R.S. 2024, and section 14-10-131(2)(c), C.R.S. 2024, into "C.R.S. § 14-10-129(2)(c)," this typographical error does not undercut the substance of its finding.

[3] Further, mother's argument regarding the court's determination of decision-making responsibility is foreclosed by section 14-10-131(2)(b.5), which provides that a court may modify decision-making responsibility when "[t]here has been a modification in the parenting time order pursuant to section 14-10-129, that warrants a modification of the allocation of decision-making responsibilities."  The district court's rationale for the modification of the parenting time schedule from being primarily with mother to primarily with father also warrants the change in decision-making responsibility from being solely mother's to joint.  This alternative rationale also supports the district court's order.

court's finding that mother had coached the children to make false reports about father.

¶ 25    We first address the court's use of the report. Dr. Kilmer was appointed as the parental responsibility evaluator (PRE) in this case and issued his PRE report in December 2022. The PRE report contained statements the children had made during their interview with Dr. Kilmer, along with his analysis and evaluation. Although he was later removed from the statewide PRE list, his report was already part of the district court's record at the time of the June 27 hearing. During that hearing, the district court took judicial notice of the contents of its court file, which included the PRE report. Neither party objected.

¶ 26    But when the court later indicated that it had reviewed and would consider the PRE report, mother's counsel made the following record:

> Your Honor, if I could just -- for the record, the PRE Report obviously was filed with [the court]. There has never been a hearing in which the PRE Report or the PRE himself was available to be cross-examined, and [the court] is aware of the issues related to Dr. [Kilmer] and his report, and his removal from the PRE list. Thank you, Your Honor.

12

¶ 27     Mother argues that she "objected to the court taking judicial notice of the contents of the PRE Report in this manner."  She also contends that she preserved her two-pronged argument that (1) the PRE report, and hearsay within it, is not something that can be judicially noticed; and (2) she was not provided the opportunity to cross-examine Dr. Kilmer about what he reviewed and his conclusions.

¶ 28     The record mother made was not sufficient to preserve her entire argument for review.  "To properly preserve an argument for appeal, the party asserting the argument must present 'the sum and substance of the argument' to the district court."  *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 (quoting *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50).  The only argument mother presented to the district court was that she did not have the opportunity to cross-examine Dr. Kilmer and that he was removed from the PRE list.  Her statement was sufficient to preserve an objection to Dr. Kilmer's findings and conclusions.  But, as the court noted in its order, it "[did] not rely on Dr. Kilmer's opinions as an expert since he did not testify and was not subject to cross-examination."

¶ 29　　Instead, the district court relied on "the statements [in the report] attributed to [the children]." But mother didn't object to the court taking judicial notice of the report or considering the statements in it (or indeed argue that they were hearsay). Thus, her argument that the court couldn't have considered the contents of the PRE report under judicial notice is unpreserved. *See People v. Tallent*, 2021 CO 68, ¶ 11 ("[A]n appellate court has an independent, affirmative duty to determine whether a claim is preserved . . . ."). When a party fails to advance an argument in the district court, that argument is generally waived. *Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶ 18.

¶ 30　　But regardless of the extent of the district court's reliance on the statements in the PRE report, there was ample evidence in the record to support the court's ultimate findings and conclusion.[4]

---

[4] Mother also argues that "[the PRE report] would never be admitted as evidence in a proceeding without the PRE appearing and being admitted as an expert and the proper foundation being laid." We note that C.R.C.P. 16.2(g)(2)(c) provides that "[t]he court shall receive the expert reports into evidence without further foundation, unless a party notes an objection in the Trial Management Certificate." Mother does not argue that she made such an objection, thus contradicting her argument.

¶ 31    Mother argues that apart from "the [c]ourt's pure conjecture" and the PRE report, there was no evidence that she coached the children to make claims of abuse. It's true that the children's statements within the PRE report constitute a portion of the basis for the coaching finding. But the district court also relied on other evidence to determine that the children's abuse allegations were not credible and that, as a result, mother likely influenced their report.

¶ 32    After "[v]iewing all the evidence together," the court found that "Mother coached the boys to make false allegations against Father." It concluded that "the coaching may have been direct or indirect or a combination of both." But it didn't rely on the opinions from the PRE report to get there.

¶ 33    Instead, in reaching this conclusion the district court found that mother was "trashing Father," focusing her litigation on disrupting father's parenting time, and using the children's reports of abuse in strategic instead of protective ways. Further, it found that "Mother simply shares her feelings (most of them negative) about Father far too frequently, including with the children, and the boys have received the message that Father is the bad guy." Based on mother's actions, intentional or not, the court found that "[t]he

15

boys . . . have learned how to please their primary caretaker. The boys knew their allegations against Father would please Mother."

¶ 34    Mother also argues that there was no evidence that she previously engaged in coaching the children. But the district court's order belies this claim. Setting aside the statements from the PRE report and the reasons discussed above, the court found historical coaching because of the incredible nature of the children's allegations, mother's strategic rather than protective litigation tactics, its finding that her denial of coaching was not credible, and its findings that mother was exposing the children to an environment "where trashing Father and calling him 'Ray' have been commonplace." Further, mother doesn't explain why these findings are wrong or how they affected the outcome of this case.

¶ 35    Regardless, the coaching finding was only one small part of the court's larger conclusion that mother was "stunting [the children's] emotional development." This ultimate conclusion was what the court relied on when it issued its "orders . . . intended to ameliorate the emotional harm Mother has caused." Even completely disregarding the coaching finding, there was still sufficient evidence supporting the district court's findings of

16

emotional harm to the children. The court made the following findings relevant to emotional harm:

- "Mother has been sharing inappropriate adult information and opinions with the boys."

- "Specifically, . . . Mother has shared with the boys, either directly or in their presence, the flaws she [found] in Father and his parenting style."

- "Mother has conveyed to the boys that it [was] outrageous that [father] want[ed] them to call him 'Dad' instead of 'Ray.'"

- "Mother demonstrated with the method and timing of her pleadings that she was attempting to maximize the amount of time Father would be restricted from seeing the children."

- "Mother exhibit[ed] a pattern of attempting to seriously diminish Father's standing."

- "Based on the complete lack of any evidence of physical injuries to the children, . . . impossibility of confinement in the manner reported by the children, . . . [and] stories containing other wild exaggerations, . . . the [children's]

reports [were] false and . . . Mother encouraged [them] to invent false stories about their Father."

- "Mother [was] blinded by her dislike of Father."

- "The Court has lost all trust in Mother's ability to facilitate the relationship between Father and the children."

¶ 36    These factual findings are reviewable for clear error, "meaning that we won't disturb such findings if there is any evidence in the record supporting them." *Bartenders & More*, ¶ 13 (quoting *Woodbridge Condo. Ass'n*, ¶ 24). They have support in the record, and mother does not argue otherwise. Thus, we have no basis to disturb them. So even if all of mother's arguments about the PRE report and the coaching finding were correct, they would not have substantially influenced the outcome of the proceeding, *see Stockdale*, ¶ 32, and any error is therefore harmless.

### 3.    The District Court's Credibility Findings and Denial of Reconsideration

¶ 37    Mother contends that the district court erred in its credibility findings and refused to acknowledge or reconsider its findings and

conclusions when presented with evidence that father perjured himself during his testimony.

¶ 38 "The very 'sanctity of trial court findings is derived from the recognition that the trial judge's presence during the presentation of testimonial evidence provides an unparalleled opportunity to determine the credibility of the witnesses and the weight to be afforded the evidence which is before the court.'" *In re Marriage of Wollert*, 2020 CO 47, ¶ 23 (quoting *Page v. Clark*, 592 P.2d 792, 796 (Colo. 1979)). Given this unique position of the district court, "we will not disturb the . . . determination of matters involving weight and credibility of the evidence," *In re Marriage of Foottit*, 903 P.2d 1209, 1213 (Colo. App. 1995), "unless the findings of the trial court are manifestly erroneous," *In re Marriage of Hoyt*, 742 P.2d 963, 964 (Colo. App. 1987).

¶ 39 The district court made numerous credibility findings based on testimony adduced at the hearing. Generally, the court found that mother's testimony was not credible, the children's allegations regarding abuse and confinement were facially unbelievable or not credible, and father's testimony regarding the children was credible.

As an example, the court made the following finding about mother's testimony:

> The Court does not find Mother's testimony at the hearing on June 27, 2023, to be credible. Her excuses for delayed filing in Oregon instead of prompt filing in Colorado were not credible. Her testimony about when she made the decision to file is not credible. Mother's denial of coaching the boys prior to meeting with the PRE is not credible.

¶ 40 We understand mother's argument that she presented other evidence contradicting father's testimony at the hearing. But that doesn't change our analysis. We are limited by the record before us and "[a] cold record is a poor substitute for live testimony." *Wollert*, ¶ 23 (quoting *People v. Scott*, 600 P.2d 68, 69 (Colo. 1979)). The additional evidence pointed to by mother does not demonstrate that the district court's credibility findings about father are manifestly erroneous. And even if it did, that evidence would not call into question the court's credibility findings about mother or the children. We simply have no basis on this record to disturb the district court's credibility findings.

¶ 41 In addition to the credibility findings made at the hearing on father's motion to restrict parenting time, mother argues that the

20

district court erred by not reconsidering those credibility findings in light of newly discovered evidence demonstrating that father committed perjury.

¶ 42    At the hearing, father and two other witnesses testified that his basement was unfinished and did not have rooms or drywall. After the district court issued its order — which credited father's testimony about his home as credible — mother filed a motion for post-trial relief under C.R.C.P. 59 and 60.  In that motion, she sought relief under C.R.C.P. 59(d)(4), arguing that she had newly discovered evidence showing that father lied to the court about the condition of his basement.  That evidence consisted of social media posts showing father constructing a mushroom growing operation in his basement.

¶ 43    The district court denied her request to reconsider, finding that mother's newly provided evidence was in fact posted on social media in January 2023 and, therefore, was discoverable before the hearing in June.  It determined that the newly provided evidence was not "material for the party making the application which that party could not, with reasonable diligence, have discovered and produced at the trial."  C.R.C.P. 59(d)(4).

¶ 44    Reviewing for an abuse of discretion, *Unicure, Inc. v. Thurman*, 599 P.2d 925, 928 (Colo. App. 1979), we perceive no error in the district court's denial of the motion. A party must show that "the evidence could not have been discovered in the exercise of reasonable diligence" in order to receive relief under the rule. *Id.* And as the district court noted, these social media posts and publications are materials that could have been discovered and produced at the hearing.

### 4.    Knowledge Outside of the Record

¶ 45    Mother next argues that the district court improperly considered evidence outside of the record by relying on its own knowledge about the location in Mexico where mother traveled with the children.

¶ 46    In the challenged June 2023 order, the court noted that in early 2022, mother took the children to Chihuahua, Mexico, where she ran an ultramarathon. Mother and the children flew to Texas and then drove eleven hours to get to the race site. The district court stated that they traveled through "one of the most dangerous regions in Mexico" and referenced a U.S. State Department's advisory, which recommended that individuals "reconsider travel to"

22

Chihuahua. The court criticized mother for opting to take the children through a dangerous area while she "withheld information about her journey" from father, instead of leaving them with father, who was available to care for them.

¶ 47    Mother contests the district court's reference to a travel advisory, arguing that it was not in place at the time of the trip and that no one admitted evidence on the topic. She says that "the Court [took] it upon itself to look it up" and that "[t]he Court's efforts to find 'evidence' that was not presented by Father is clearly error."

¶ 48    We disagree. As mother admits in her briefing, the district court, without objection, took judicial notice of its case file at the June 2023 hearing. The case file contained all of the matters previously litigated by the parties, including this very issue, which was the subject of evidentiary hearings that concluded in August 2022. In its order addressing the parenting disputes at that time, and the Mexico trip in particular, the court noted that it was entering "detailed factual findings . . . to place the parties on notice of the [c]ourt's degree of alarm initiated by mother's entire manner of handling the Mexico trip." The court noted in its August 2022

order that, at that time, the State Department had categorized Chihuahua as being "classified as a Level 3 state, meaning that U.S. citizens should 'reconsider travel to' that region 'due to crime and kidnapping.'"

¶ 49  Contrary to mother's argument, "a court may take judicial notice of its own records and adopt factual findings . . . involv[ing] the same parties and the same issue." *In Interest of C.A.B.L.*, 221 P.3d 433, 442 (Colo. App. 2009). In its August 2022 order, the court found that (1) "mother does not have the authority to jeopardize the safety of the children by requiring them to travel to the race with her, and that it was a mistake to do so in 2022"; (2) "U.S. citizens should 'reconsider travel to' [Chihuahua]"; and (3) "mother failed to consider the best interests of the children with respect to her trip to Mexico."

¶ 50  In its June 2023 order, the court noted that

> [t]hough this episode occurred more than a year ago, it fits a pattern of Mother withholding important information about the children from Father. More importantly, it demonstrates that Mother is willing to place the children's physical safety in jeopardy to keep them close to her. Mother's default position is to always avoid including Father in the children's lives, no matter the risk to their lives.

24

¶ 51   The court incorporated its earlier factual findings to demonstrate what it found to be a concerning pattern, not as an independent basis upon which it decided the pending motion to restrict parenting time.  It was not error for the court to adopt its findings from its August 2022 order as support for its June 2023 conclusions.  And to the extent that mother seeks to challenge the district court's August 2022 findings, any such challenge is untimely.  *See* C.A.R. 4(a)(1).[5]  Thus, we discern no error in the district court's reliance on findings from earlier in the case.

### C.   The Application of Kayden's Law

¶ 52   Lastly, mother contends that the district court erred by concluding that section 14-10-127.5 (known as "Kayden's Law") is inapplicable here.

¶ 53   As an initial matter, the parties dispute preservation.  Father says mother failed to raise this issue at the June hearing and that she could not properly raise this issue for the first time in her

---

[5] Additionally, to the extent that mother argues the court cannot consider its previous findings, she is incorrect.  *See In Interest of C.A.B.L.*, 221 P.3d 433, 442 (Colo. App. 2009).  And to the extent mother argues that there are no new facts or evidence arising since its prior orders, this argument is patently refuted by the record, which includes the June 2023 event prompting the court's action.

25

motion for reconsideration. Mother counters that she didn't have an opportunity to raise the issue earlier because she didn't know how the district court was going to rule. We decline to resolve this dispute because, even if preserved, mother's claim fails on the merits.

¶ 54 Mother argues that the district court's order violates subsection (3) of Kayden's Law, which, she says, applies to these proceedings. *See* § 14-10-127.5(3). Because mother misreads the district court's order, we disagree.

¶ 55 The relevant provision of Kayden's Law states that when "a party has committed domestic violence . . . , a court shall not: (I) [r]emove a child from a protective party solely to improve a deficient relationship with an accused party; [or] (II) [r]estrict contact between a child and a protective party solely to improve a deficient relationship with an accused party."
§ 14-10-127.5(3)(b)(I)-(II).

¶ 56 In its June 2023 order, the court explained that it restricted mother's parenting time to "ameliorate the emotional harm mother has caused thus far and to prevent future harm." Later, in its order denying mother's motion for reconsideration, the court confirmed

26

that "[n]owhere in the [June 2023 order]" did it state that it "restrict[ed] Mother's parenting time to improve a deficient relationship with Father." Nonetheless, mother characterizes the order as an attempt to rebuild the children's relationship with father and says that the district court "effectively states that Mother must get over being a domestic violence victim before she can have unrestricted parenting time again." This reading grossly mischaracterizes the district court's order.

¶ 57 We agree with the district court that its order does not say that it is restricting mother's parenting time to improve the children's relationship with father. To the contrary, its findings are focused on mother's actions and the emotional harm she has caused the children. And nowhere within the order does the court state that mother "must get over" the domestic violence. In fact, the court's order states the opposite: "Mother's dislike of Father may be justified, and she is entitled to hold on to that sentiment for the rest of her life. The Court does not require Mother to change her feelings about Father to resume unrestricted parenting time."

¶ 58 Because there is no indication that the court was attempting to improve a deficient relationship with an accused party — much

less acting solely for that reason — the provision of Kayden's Law cited by mother does not apply. *See* § 14-10-127.5(3)(b)(I)-(II). Thus, we discern no abuse of discretion in the district court's denial of mother's motion to reconsider. *See, e.g., Gold Hill Dev. Co., L.P. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 52 ("An order denying a motion for reconsideration under C.R.C.P. 59 is reviewed for abuse of discretion.").

## D. Attorney Fees

¶ 59 Father requests attorney fees and costs "pursuant to C.A.R. 39(2)." As the prevailing party, father is entitled to his costs. C.A.R. 39(a)(2). However, "the party claiming attorney fees must include a specific request, . . . and must explain the legal and factual basis for an award of attorney fees." C.A.R. 39.1. Father's request constitutes a single sentence with no explanation as to any entitlement to fees. He provides no facts or legal argument to support his request. Because he merely cites an appellate rule "without stating the specific grounds that justify an award of fees," we deny his request. *In re Marriage of Roddy*, 2014 COA 96, ¶ 32.

## III. Disposition

¶ 60　The order restricting parenting time and modifying decision-making responsibility and the order denying post-trial relief are affirmed.

JUDGE HARRIS and JUDGE YUN concur.