Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2018 CO 73**

**No. 16SC114, <u>Johnson v. Schonlaw</u>—Jury Deliberations—Conduct Affecting Jurors—
Risk of Prejudice—Harmless Error.**

Johnson sought review of the court of appeals' judgment reversing jury verdicts
in his favor on personal injury claims against Schonlaw and VCG Restaurants.  At the
close of the case, the district court overruled the objections of Schonlaw and VCG to its
announced decision to allow the alternate to deliberate to verdict with the other jurors.
The court of appeals concluded that the trial court had erred in allowing an alternate juror
to participate in jury deliberations over the objection of a party, and that the error gave
rise to a presumption of prejudice, which remained unrebutted by Johnson, and therefore
required reversal.

The supreme court reverses, holding that, because the error did not affect the
substantial rights of any defendant, it should have been disregarded as harmless, as
required by C.R.C.P. 61.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2018 CO 73**

**Supreme Court Case No. 16SC114**
*Certiorari to Colorado Court of Appeals*
Court of Appeals Case No. 13CA802

**Petitioner:**

Albert Johnson,

v.

**Respondents:**

Ryan Lee Schonlaw and VCG Restaurants Denver, Inc., d/b/a PT's ALL NUDE, a Colorado

corporation.

**Judgment Reversed**
*en banc*
September 17, 2018

**Attorneys for Petitioner:**
The Viorst Law Offices, P.C.
Anthony Viorst
  *Denver, Colorado*

**Attorneys for Respondents:**
Berg Hill Greenleaf Ruscitti LLP
Rudy E. Verner
  *Boulder, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers Association:**
Darling Milligan Horowitz PC
Jason B. Wesoky
  *Denver, Colorado*

**CHIEF JUSTICE COATS** delivered the Opinion of the Court.
**JUSTICE HART** concurs in the judgment.
**JUSTICE GABRIEL** dissents, and **JUSTICE HOOD** joins in the dissent.

¶1     Johnson sought review of the court of appeals' judgment reversing jury verdicts in his favor on personal injury claims against Schonlaw and VCG Restaurants. At the close of the case, the district court overruled the objections of Schonlaw and VCG to its announced decision to allow the alternate to deliberate to verdict with the other jurors. The court of appeals concluded that the trial court had erred in allowing an alternate juror to participate in jury deliberations over the objection of a party, and that the error gave rise to a presumption of prejudice, which remained unrebutted by Johnson, and therefore required reversal.

¶2     Because the error in this case did not affect the substantial rights of either Schonlaw or VCG, it should have been disregarded as harmless, as required by C.R.C.P. 61. The judgment of the court of appeals is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

**I.**

¶3     Albert Johnson filed suit against VCG Restaurants Denver, Inc., d/b/a/ PT's All Nude, its managing agency, and a number of its employees, including Ryan Lee Schonlaw, asserting claims arising from injuries he sustained just outside the nightclub at closing. One of the defendants was dismissed before trial, and of the remaining defendants, the jury returned verdicts finding Schonlaw liable on claims of battery and intentional infliction of emotional distress and VCG liable for battery, intentional infliction of emotional distress, and negligent supervision. The district court ultimately entered judgments of $74,452.83 against Schonlaw and $246,462 against VCG.

2

¶4    While there was conflicting testimony about the altercation in which Johnson was injured, it appeared undisputed that Johnson suffered serious facial injuries requiring surgery, caused either by a blow inflicted by Schonlaw or by Johnson's face coming into contact with the ground as the result of that blow or lost footing during a struggle with Schonlaw and at least one of the club's other employees. It was also undisputed that the employees involved in the confrontation, or "courtesy patrol members," were all substantially larger than the 5'10'', 168-pound Johnson, two of whom were described as former University of Colorado football players, one weighing 365 pounds; and that a taxi driver called 911 to report what he characterized as a guy getting "beaten and choked."

¶5    The jury was instructed on the defendants' theory that the "courtesy patrol members" were exercising their legal rights and/or the legal rights of their employer, VCG, in preventing Johnson from regaining access to the club and in escorting him away from the club. In addition to the elements of battery, intentional infliction of emotional distress, and negligent supervision and training, the jury was instructed on the affirmative defenses of consent, self-defense, defense of another, defense of real property, and comparative negligence.

¶6    After the close of the evidence, the district court asked the parties if they would agree to allow the alternate juror, who had been permitted without objection to participate in pre-deliberation discussions, to deliberate with the six regular jury members. Johnson agreed, but Schonlaw and VCG objected. The district court overruled their objection, indicating that it considered the matter to be within the court's discretion, and it instead instructed the jury that all seven jurors, including the alternate, would

3

deliberate to a verdict. The jury deliberated over the course of some three days. On the third and final day of deliberations, the jurors sent a note to the court indicating that they could not come to an agreement on punitive damages. Johnson then withdrew his punitive damages claim and shortly thereafter the jury returned its verdicts, signed by all seven members.

¶7 On direct appeal, the court of appeals reversed and remanded for a new trial, concluding that whatever discretion may be permitted a trial court by C.R.C.P. 47(a)(5) with regard to pre-deliberation discussions does not extend to allowing an alternate to deliberate with the regular jurors and, similarly, that any discretion granted at section 13-71-142, C.R.S. (2018), to retain the alternates when the jury retires to deliberate does not conflict with the express requirement of Rule 47(b) for the court and parties to agree before permitting an alternate juror's actual participation in deliberations. Having found that the district court therefore erred in permitting the alternate to participate over the objection of a party, the intermediate appellate court further found, in reliance on People v. Boulies, 690 P.2d 1253, 1255–56 (Colo. 1984), a more-than-quarter-century-old criminal case from this court, that the participation of the alternate raised a presumption of prejudice requiring reversal unless rebutted, and that the presumption remained unrebutted by Johnson.

¶8 Johnson petitioned for review solely on the question whether permitting the alternate to deliberate in this civil case was an error subject to the harmless error analysis dictated by C.R.C.P. 61, as distinguished from an error raising a presumption of prejudice requiring reversal in the absence of adequate rebuttal.

4

**II.**

¶9        Unlike the defendant in a criminal prosecution, the parties to a civil proceeding in this jurisdiction are not guaranteed a jury trial by either the federal or state constitution. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 432 (1996) ("The Seventh Amendment . . . governs proceedings in federal court, but not in state court."); Scholz v. Metro. Pathologists, P.C., 851 P.2d 901, 906 (Colo. 1993) (The Colorado Constitution "does not guarantee a trial by jury in civil cases as a matter of right."). Rather, the right to a jury trial in civil cases in this jurisdiction is derived from C.R.C.P. 38 and largely reflects the former distinction between actions at law and actions in equity. See Kaitz v. Dist. Ct., 650 P.2d 553, 555 n.3 (Colo. 1982) ("[T]he law-equity distinction continues to survive for the purpose of determining whether there is a right to a jury trial in a civil action."). The constitution and statutes of this jurisdiction, however, do govern the number of jurors making up a jury in civil actions in which jury trials are both available and demanded. See Colo. Const. art. II, § 23 ("[A] jury in civil cases in all courts . . . may consist of less than twelve persons, as may be prescribed by law."); § 13-71-103, C.R.S. (2018) ("A jury in civil cases shall consist of six persons, unless the parties agree to a smaller number, which shall be not less than three."). And by supreme court rule, alternate jurors are expressly permitted to "deliberate and participate fully with the principal jurors in considering and returning a verdict" if the court and parties agree. C.R.C.P. 47(b).

¶10        Whether or not the presumption of prejudice that we articulated in Boulies, requiring rebuttal of prejudice beyond a reasonable doubt by the People, 690 P.2d at 1255–56, would therefore have applied to a civil jury in any event, refinements in the law

governing the nature and remedies for error occurring in the trial process in general, and the presence and use of alternate jurors in particular, have substantially undermined our analysis in Boulies, even with regard to the criminal context in which it was intended, as we make clear in James v. People, 2018 CO 72, __ P.3d __, also announced today. Quite apart from our treatment in Boulies of the presence of an alternate during deliberations as an error of constitutional magnitude and our failure to apply a plain error standard despite the absence of any objection to the court's instruction in Boulies, 690 P.2d at 1256–57, both of which now appear to be in conflict with the Supreme Court's subsequent rationale in United States v. Olano, 507 U.S. 725 (1993), we noted in James that in the absence of structural error, our holding in People v. Novotny requires an "appropriate case specific, outcome-determinative analysis" in evaluating the harmfulness of an error, 2014 CO 18, ¶ 2, 320 P.3d 1194, 1196. James, ¶ 20 , __ P.3d at __. And in Laura A. Newman, LLC v. Roberts, we extended our holding in Novotny to the harmless error analysis required by C.R.C.P. 61 in civil cases, expressly abandoning prior case law mandating automatic reversal for error in jury selection that effectively deprives a party of his full use of peremptory challenges. 2016 CO 9, ¶ 26, 365 P.3d 972, 978.

¶11    In James we also rejected the notion that the participation of an alternate during deliberations, at least where that participation was not permitted by the court in bad faith, see Novotny, ¶ 23, 320 P.3d at 1202, could defy harmless error analysis, even where the defendant has a constitutional right to a jury trial. James, ¶ 21, __ P.3d at __. That proposition applies with equal if not greater force in the case of an intrusion on the deliberations of a jury both the right to which and the prescribed number of jurors for

6

which exist only by statute or rule. As civil trial error governed by C.R.C.P. 61, the unauthorized participation of an alternate in civil jury deliberations must be disregarded as harmless if it does not affect the substantial rights of the parties. We have long held that an error affects a substantial right only if "it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." Roberts, ¶ 24, 365 P.3d at 978 (emphasis omitted) (quoting Bly v. Story, 241 P.3d 529, 535 (Colo. 2010)); see also Banek v. Thomas, 733 P.2d 1171, 1178 (Colo. 1986) (tracing this formulation of the harmless error standard of C.R.C.P. 61 and Crim. P. 52(a) through People v. Quintana, 665 P.2d 605 (Colo. 1983), to Kotteakos v. United States, 328 U.S. 750 (1946)). Because an error impairing the basic fairness of the trial would effectively constitute error in the nature of structural error, requiring reversal without more, the erroneous participation by an alternate juror, which we have held does not in and of itself amount to structural error, James, ¶ 21, __ P.3d at __, could avoid being disregarded as harmless only if it substantially influenced the outcome of the case.

¶12    In addition to making clear that the harmless error standard requires an evaluation of the likely impact of any error on the outcome of the proceeding at issue, we have also indicated that the question of prejudicial impact cannot be reduced to a specific set of factors. People v. Roman, 2017 CO 70, ¶ 14, 398 P.3d 134, 138; Crider v. People, 186 P.3d 39, 43 (Colo. 2008). While the strength of the evidence supporting a verdict is often an important consideration, so too is the specific nature of the error in question and the nature of the prejudice or risk of prejudice associated with it. Roman, ¶ 14, 398 P.3d at 138. Therefore, although overwhelming evidence supporting a verdict may be sufficient

7

in and of itself to determine that a trial error is harmless, even in the absence of such overwhelming evidence, the harmlessness of erroneously allowing an alternate to deliberate in a civil case must remain a function of the risk of prejudice associated with that particular kind of error, under the circumstances in which the error occurred.

**III.**

¶13 One-sided as the physical altercation in this case may have been, not only the credibility of disparate witness accounts but also the reliability of the witnesses' perceptions and reasonableness of their actions, as well as the adequacy of VCG's training of its employees, were not clearly matters as to which the evidence of liability was overwhelming. An assessment of the likelihood of prejudice resulting from allowing participation by the alternate juror in the absence of the agreement of both parties, nevertheless, must ultimately depend upon the rationale for legislatively dictating a specific number of jurors for civil juries and the risk of prejudice associated with erroneously allowing an alternate to be added to that number.

¶14 As the Supreme Court has held in characterizing the twelve-man requirement of common-law juries as "a historical accident" and as "wholly without significance 'except to mystics,'" the number of jurors itself is not an "essential feature" of the right to a jury trial such that it should be understood as implied in the Sixth Amendment, much less as incorporated in the due process clause of the Fourteenth Amendment. See Williams v. Florida, 399 U.S. 78, 100, 102 (1970). While we have construed the state constitution to provide for no right to a jury trial in civil proceedings at all, it clearly contemplates a jury of twelve, where jury trials are otherwise allowed, unless a lesser number is prescribed

by law, Colo. Const. art. II, § 23, and the statute providing for the number of jurors in civil cases sets that number at six, unless the parties agree to some smaller number not less than three, § 13-71-103. Forerunner provisions of this formula, which date to the earliest days of statehood, strongly suggest that even the number six was chosen as a figure of practical sufficiency rather than limitation, providing as they long did for the right of any party to increase that number to twelve by merely depositing a required fee with the clerk of court. See, e.g., G.L. 1877 § 580; § 78-7-3, C.R.S. (1963).

¶15 In addition, the Rules of Civil Procedure purport to extend the number of jurors to include alternates, upon the agreement of the court and parties. Whether it succeeds or not, C.R.C.P. 47(b) appears to confine its extension of jurors beyond the number six to cases in which there is agreement of the court and parties solely to avoid conflict with the statute—not as an indication that any number greater than six without agreement would actually risk prejudicing a party. While the risk of prejudice associated with depriving a defendant of the number of jurors to whose unanimous agreement of liability he is statutorily entitled seems clear enough, the same cannot be said of finding him liable only upon the agreement of an even greater number of jurors. This is especially the case where, as here, the additional juror has been vetted and chosen in the same manner as the other jurors and has already been permitted, without challenge, to participate in pre-deliberation discussions with the other jurors.

¶16 Were a court to erroneously permit the participation of an alternate in violation of statute or rule other than in good faith, the question of whether the error would amount to structural or trial error would clearly require a different analysis. See Rivera v. Illinois,

556 U.S. 148, 157 (2009); <u>Novotny</u>, ¶ 23, 320 P.3d at 1202. Although the defendants in this case objected to the court's decision to allow the alternate to deliberate, they did not suggest that the court lacked discretion to do so, as distinguished from merely abusing its discretion. And although the court of appeals found that the district court erred in believing its discretion to permit pre-deliberation discussions with the other jurors extended to permitting the alternate to actually deliberate over the objection of a party, there was no suggestion, and no basis to suggest, that the district court acted in bad faith.

¶17 In light of the evidence and circumstances of this case, we can say with fair assurance that the court's error in permitting the alternate juror, who was indistinguishable from the other jurors in all meaningful respects, to deliberate and participate fully with the principal jurors in considering and returning a verdict, notwithstanding its failure to secure the agreement of all parties, did not substantially influence the outcome of the case. The error therefore did not affect the substantial rights of the defendants.

**IV.**

¶18 Because the error in this case did not affect the substantial rights of either Schonlaw or VCG, it should have been disregarded as harmless, as required by C.R.C.P. 61. The judgment of the court of appeals is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

**JUSTICE HART** concurs in the judgment.
**JUSTICE GABRIEL** dissents, and **JUSTICE HOOD** joins in the dissent.

JUSTICE HART, concurring in the judgment.

¶19    I concur in the majority's judgment concluding that the error in this case was harmless. However, I part with the majority in its reliance on James v. People, 2018 CO 72, __ P.3d __. In James, also announced today, the majority held that challenges to the presence of alternate jurors in jury deliberations during criminal proceedings should be reviewed for harmless error, not presumed prejudice. I joined in the James concurrence, concluding that presumed prejudice was the appropriate standard of review. I perceive no conflict between the majority's conclusion here and the concurrence's analysis in James because criminal and civil proceedings are fundamentally different. Whereas the United States and Colorado Constitutions afford defendants in criminal prosecutions the right to a jury trial, parties to civil proceedings in Colorado must timely demand and advance statutory fees to obtain jury trials in cases where the right to a jury even exists. See U.S. Const. amend. VI; Colo. Const. art. II, § 23. And, unlike criminal proceedings that strictly require deliberation by a twelve-person jury, the number of jurors permitted in civil jury trials may be agreed upon by the parties, so long as they comply with the statutory framework. See Colo. Const. art. II, § 23; Crim. P. 23(a)(1); see also § 13-71-103, C.R.S. (2018)("A jury in civil cases shall consist of six persons, unless the parties agree to a smaller number, which shall not be less than three."). Moreover, although not permitted in criminal proceedings, alternate jurors in civil cases may "deliberate and participate fully with the principal jurors" when the court and parties agree. C.R.C.P. 47(b). As such, I discern no error in affording criminal defendants a heightened standard of review to alternate juror challenges—specifically, presumed prejudice—than parties

1

in civil proceedings.  Accordingly, while I disagree with the majority's reliance on <u>James</u>,

I respectfully concur in its judgment.

JUSTICE GABRIEL, dissenting.

¶20 Today, the majority concludes that our recent decisions have established a harmless error or structural error dichotomy for cases like the present one and that the harmless error standard should apply here. In reaching this conclusion, the majority effectively (1) overrules over three decades of precedent and applies an outcome-determinative, harmless error standard, notwithstanding the fact that the error in this case defies review under such a standard, and (2) renders virtually meaningless C.R.C.P. 47(b), which allows an alternate juror to deliberate only upon agreement of the court and the parties.

¶21 As more fully set forth in my concurring opinion in James v. People, 2018 CO 72, ___ P.3d ___ (Gabriel, J., concurring in the judgment), which is also being announced today, the majority's analysis appears to be based on a false dichotomy. Specifically, contrary to the majority's view that in a case like this our review must either be for harmless error or structural error, both the United States Supreme Court and this court have recognized that in cases like the present one, which defy harmless error review, courts apply a third category of error, namely, one of presumed prejudice. See id. at ¶¶ 29–32, ___ P.3d at ___. Moreover, unlike the majority, I perceive nothing in People v. Novotny, 2014 CO 18, 320 P.3d 1194, or Laura A. Newman, LLC v. Roberts, 2016 CO 9, 365 P.3d 972, that altered or is in any way in conflict with this settled principle.

¶22 Accordingly, pursuant to United States v. Olano, 507 U.S. 725, 735, 739 (1993), People v. Burnette, 775 P.2d 583, 584–85, 587–88 (Colo. 1989), and People v. Boulies, 690 P.2d 1253, 1255–57 (Colo. 1984), I would conclude that when a case defies harmless

1

error review, we should assess the error by applying a rebuttable presumption of prejudice. Applying that standard here, I would further conclude that Johnson has not rebutted the presumption of prejudice that arose from having an alternate juror participate in the entirety of the jury's deliberations, and I would therefore affirm the division's determination that a new trial is required. To hold otherwise would be to acknowledge that a significant error has occurred but to deny respondents Ryan Lee Schonlaw and VCC James Restaurants (collectively, "VCC James Restaurants") and parties like them a remedy. I do not believe that the law should countenance such a result.

¶23 For these reasons, I respectfully dissent.

## I. Analysis

¶24 In my concurring opinion in James, ¶¶ 23–47, ___ P.3d at ___, I explained at length my view as to why we should continue to recognize a rebuttable presumption of prejudice in cases like the present one, in which a nonstructural trial error defies harmless error review. By not doing so, we are creating an analytical regime that will virtually always result in our recognizing a wrong while simultaneously denying an aggrieved party any remedy for that wrong. Indeed, as I read the majority's analysis, a violation of C.R.C.P. 47(b)'s requirement that the parties agree to allow an alternate juror to deliberate can never be prejudicial, unless, perhaps, if the alternate juror's presence caused the number of deliberating jurors to exceed twelve (and it is unclear to me that the majority would perceive prejudice even in that scenario). Thus, in the interest of clarifying that an error like that present here is not structural, the majority appears to adopt the opposite

2

rule, namely, a rule of automatic affirmance. I respectfully cannot subscribe to such an analysis, which I believe renders a longstanding rule of civil procedure virtually meaningless.

¶25 In reaching this conclusion, I am not persuaded by the majority's conclusion that cases like <u>Novotny</u> and <u>Newman</u> effectively overruled <u>Boulies</u> and its progeny. <u>See</u> maj. op. ¶ 10. Neither case expressly did so. Rather, both <u>Novotny</u> and <u>Newman</u> overruled prior cases that had mandated automatic reversals when challenges for cause were erroneously denied and the aggrieved party had exercised all of his or her peremptory challenges. <u>See</u> <u>Newman</u>, ¶¶ 3, 10, 365 P.3d at 973, 975; <u>Novotny</u>, ¶¶ 2, 27, 320 P.3d at 1196, 1203. As noted above, however, <u>Boulies</u> did not establish an automatic reversal rule, and neither <u>Novotny</u> nor <u>Newman</u> addressed the issue of presumed prejudice from nonstructural errors defying harmless error review.

¶26 Moreover, I perceive nothing in either <u>Novotny</u> or <u>Newman</u> that is inconsistent with <u>Boulies</u>. To the contrary, as noted above, both the United States Supreme Court and this court have recognized that the outcome-determinative, harmless error standard and the rebuttable presumption of prejudice are different standards that apply to different types of cases. <u>See</u> <u>Olano</u>, 507 U.S. at 735, 739; <u>Burnette</u>, 775 P.2d at 590; <u>Boulies</u>, 690 P.2d at 1255–57. If a particular error affords a party an opportunity to establish harmless error, then the outcome-determinative, harmless error standard set forth in <u>Novotny</u> and <u>Newman</u> should apply. If the error is of the type that by its nature defies harmless error review, then the presumption of prejudice standard should apply. <u>See</u> <u>Olano</u>, 507 U.S. at 735, 739; <u>Burnette</u>, 775 P.2d at 590; <u>Boulies</u>, 690 P.2d at 1255–57.

¶27 Accordingly, and given our consistent recognition that stare decisis principles require us to follow a rule of law established in our prior cases unless sound reasons exist for departing therefrom, see People v. Kutlak, 2016 CO 1, ¶ 18, 364 P.3d 199, 205, I perceive no reason to depart from Boulies and its progeny, nor do I perceive any basis for effectively overruling those cases. The question for me thus becomes whether the error in this case defies harmless error review.

¶28 Here, the parties do not dispute that an alternate juror improperly deliberated with the jury. We must therefore determine whether and how VCC James Restaurants could establish prejudice from this error.

¶29 The majority says that the outcome-determinative, harmless error test should apply here. See maj. op. ¶ 11. I, however, cannot see how VCC James Restaurants could show prejudice under this standard, given the restrictions of CRE 606(b).

¶30 CRE 606(b) provides, in pertinent part:

> [A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict . . . or concerning his mental processes in connection therewith.

Id.

¶31 In light of this prohibition, I cannot see how VCC James Restaurants could possibly establish (1) how, if at all, the alternate juror contributed to the jury's deliberations or (2) the impact, if any, that the alternate may have had on the other jurors. This, however, is precisely the kind of evidence that VCC James Restaurants would need to introduce to establish prejudice under the majority's test. As a result, I view this case as a prototypical

4

example of a case in which the error evades harmless error review. Accordingly, I would apply the presumption of prejudice test to determine whether the error here requires reversal.

¶32 In Burnette, 775 P.2d at 590, we observed that the presumption of prejudice that arises from the improper involvement of an alternate juror in jury deliberations can be overcome by a showing that "the trial court took extraordinary precautions to ensure that the defendant would not be prejudiced and that under the circumstances of the case, the precautions were adequate to achieve that result." In this case, Johnson points to no precautions undertaken by the trial court to ensure the absence of prejudice, and the record reveals none. To the contrary, the record shows that the trial court wished to allow the alternate to deliberate, VCC James Restaurants objected to the alternate's doing so, and the trial court overruled the objection and let the alternate deliberate anyway. The alternate juror then participated fully in the jury's deliberations, and I perceive nothing that would support a conclusion that the resulting presumption of prejudice has been overcome. See Olano, 507 U.S. at 741 (observing that the presence of alternate jurors might be prejudicial if the alternates actually participated in the deliberations, either verbally or through body language); Manning v. Huffman, 269 F.3d 720, 726 (6th Cir. 2001) (noting that the Olano court made it "quite clear" that in some situations a presumption of prejudice is appropriate and concluding that an alternate juror's participation in deliberations was sufficient to show prejudice).

## II. Conclusion

For these reasons, as well as for the reasons set forth in my concurring opinion in James, ¶¶ 23–47, ___ P.3d at ___ (Gabriel, J., concurring), I would continue to recognize a category of presumed prejudice for nonstructural trial errors that by their nature evade harmless error review. Applying that standard here, I would further conclude that Johnson has offered no evidence or argument sufficient to overcome the presumption of prejudice that arose when the trial court erroneously allowed an alternate juror to participate fully in the jury's deliberations. Like the division below, I would therefore reverse the judgment and remand this case for a new trial.

Accordingly, I respectfully dissent.

I am authorized to state that JUSTICE HOOD joins in this dissent.