Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 17, 2018

**2018 CO 72**

**No. 16SC81, <u>James v. People</u>—Jury Deliberations—Conduct Affecting Jurors—Risk of Prejudice—Harmless Error.**

James sought review of the court of appeals' judgment affirming his conviction for possession of methamphetamine. Upon realizing that it had failed to discharge the alternate juror before the jury retired to deliberate, the district court recalled and dismissed the alternate; instructed the jury to continue on with deliberations uninfluenced by anything the alternate may have said or done; and denied the defense motion for dismissal or mistrial. The court of appeals concluded that the trial court's error in allowing the alternate juror to retire with the jury and the juror's presence for part of the deliberations were harmless beyond a reasonable doubt, and after rejecting James's other assignments of error, affirmed his conviction.

The supreme court holds that the evidence proving the defendant's guilt of the offense of possession was overwhelming, and therefore the district court's failure to recall an alternate juror for approximately ten minutes amounted, under the facts of the case, to harmless error. Accordingly, the judgment of the court of appeals is affirmed.

**2018 CO 72**

**Supreme Court Case No. 16SC81**
*Certiorari to Colorado Court of Appeals*
Court of Appeals Case No. 14CA2030

**Petitioner:**

Dustin Lee James,

v.

**Respondent:**

The People of the State of Colorado.

**Judgment Affirmed**
*en banc*
September 17, 2018

**Attorney for Petitioner:**
Schelhaas Law LLC
Krista A. Schelhaas
  *Littleton, Colorado*

**Attorneys for Respondent:**
Cynthia H. Coffman, Attorney General
Jillian J. Price, Assistant Attorney General
  *Denver, Colorado*

**CHIEF JUSTICE COATS** delivered the Opinion of the Court.
**JUSTICE GABRIEL** concurs in the judgment, and **JUSTICE HOOD** and **JUSTICE HART** join in the concurrence in the judgment.

¶1 James sought review of the court of appeals' judgment affirming his conviction for possession of methamphetamine. Upon realizing that it had failed to discharge the alternate juror before the jury retired to deliberate, the district court recalled and dismissed the alternate; instructed the jury to continue on with deliberations uninfluenced by anything the alternate may have said or done; and denied the defense motion for dismissal or mistrial. The court of appeals concluded that the trial court's error in allowing the alternate juror to retire with the jury and the juror's presence for part of the deliberations were harmless beyond a reasonable doubt, and after rejecting James's other assignments of error, affirmed his conviction.

¶2 Because the evidence supporting the defendant's guilt of the lesser offense of possession, the only offense of which he was convicted, was overwhelming and was in fact never seriously challenged, the district court's failure to recall the alternate for approximately ten minutes amounted, under the facts of this case, to harmless error. The judgment of the court of appeals is therefore affirmed.

**I.**

¶3 Dustin James was initially charged with two counts of distribution of a controlled substance, one count of possession with intent to manufacture a controlled substance, and one count of possession with intent to distribute a controlled substance, all but the last of which were dismissed before trial. He was acquitted of the charged offense of possession with intent to distribute methamphetamine but was convicted of the lesser offense of possession. He was sentenced to three years of intensive supervised probation.

2

¶4     At trial, the People presented evidence to the effect that the defendant was present at a house upon which the police executed a search warrant. With regard to the lesser offense of possession, of which the defendant was actually convicted, the evidence indicated that the police also searched a car the defendant had been seen driving and found a handgun in the console and a backpack in the back seat containing the defendant's identification and twenty grams of methamphetamine. An investigator testified that the defendant told him, after being Mirandized, that the handgun and everything inside the backpack were his. The defense rested without presenting evidence and did not offer a theory of the case instruction.

¶5     Shortly after the jury retired to deliberate, the district court realized that it had not discharged the alternate and immediately called him back. In response to questioning by the court and counsel, the alternate indicated that during the approximately ten minutes he was in the jury room, he had agreed to serve as the foreperson and the jury had taken a preliminary vote to get the sense of the group. He also indicated that the jury was just beginning to discuss the elements of the charges when he was recalled by the judge.

¶6     After allowing the alternate to leave, the court also recalled the entire jury to the courtroom, explained its mistake in not stopping the alternate from retiring with the other jurors, and instructed the jurors to continue on with their deliberations, uninfluenced by anything the alternate had said or done. It then entertained and denied the defendant's motion for either dismissal or a mistrial. After accepting the jury's verdicts and determining that neither counsel wished to have the jury polled, the

court itself queried each juror individually whether his or her verdict was uninfluenced by any discussion with the alternate. Each juror answered that the alternate had not influenced his or her verdict.

¶7 On direct appeal, the court of appeals affirmed, finding, as relevant to the issue before this court, that although the defendant had a constitutional right to a jury of twelve and a verdict reached in secrecy, and although those rights were implicated by the presence of the alternate, in this case the error was nevertheless harmless beyond a reasonable doubt. In reaching this conclusion, the intermediate appellate court reasoned that the district court's instruction to the jurors that they were not to be influenced by the alternate's words or actions, in conjunction with the individual statements of the jurors affirming that their verdicts were in fact not influenced by the alternate, eliminated any reasonable possibility that the error affected the verdict.

¶8 We granted the defendant's petition for a writ of certiorari on the question whether the court of appeals erred in finding the alternate's participation harmless.

## II.

¶9 Some thirty-five years ago, in People v. Boulies, 690 P.2d 1253 (Colo. 1984), this court addressed, for the first and only time in a criminal prosecution, the effect of the presence of an alternate juror in the jury room during deliberations. In that case, the trial court had instructed the jury that the alternate, or "thirteenth juror," would be permitted to go in and listen but not voice her opinion or vote unless a vacancy occurred among the remaining twelve jurors. Id. at 1254–55. No objection was registered at that time or upon return of the jury's guilty verdict, but by motion for

4

postconviction relief, pursuant to Crim. P. 35(c), the defendant later sought a new trial on the ground, among others, that an unauthorized person was present in the jury room during deliberations. Id. at 1254. The district court agreed and ordered the defendant entitled to a new trial. Id. at 1255.

¶10  On appeal by the People, this court found, in reliance on a state constitutional right to a twelve-person jury and existing United States Supreme Court jurisprudence concerning a defendant's entitlement to a jury verdict reached in secret, that the presence of an alternate during jury deliberations sufficiently impinged upon the defendant's constitutional right to a jury trial to create a presumption of prejudice that, if unrebutted, would require reversal. Id. at 1255–56 (citing Colo. Const. art. II, § 23 and Clark v. United States, 289 U.S. 1, 13 (1933)). More specifically, we indicated that a prima facie showing by the defendant of the presence of an alternate at deliberations would shift the burden to the prosecution either to prove by a preponderance of the evidence that the alternate was not present at all or, barring that, to prove that the error was harmless beyond a reasonable doubt. Id. at 1256 & n.5. Apart from referencing the limitations imposed by CRE 606 on any inquiry into the validity of a verdict, and cases from other jurisdictions in which the temporary presence of an alternate before deliberations had begun did not invalidate the verdict, we offered no other guidance concerning proof of harmlessness. See id. at 1256 n.5.

¶11  Between that time and this, the law governing the nature and remedies for error occurring in the trial process in general, and the presence and use of alternate jurors in particular, has undergone considerable development in the jurisprudence of both this

5

court and the United States Supreme Court. In People v. Burnette, 775 P.2d 583, 584 (Colo. 1989), announced six years after our opinion in Boulies, we were faced with the related question of substituting an alternate for an incapacitated juror after deliberations had already begun. Finding that the failure to dismiss the alternate juror when the jury retired to deliberate in that case violated the dictate of Crim. P. 24(e), we then considered "the legal effect of the verdict of the improperly constituted jury," id. at 587, and concluded that the presumption of prejudice arising from the mere presence of an alternate, which we had identified in Boulies, must apply "with at least equal force" to the unauthorized participation of an alternate juror, id. at 590. In Burnette, however, we held that this presumption of prejudice could be overcome by, but only by, a showing that the trial court took extraordinary precautions to ensure that the defendant would not be prejudiced and a showing that under the circumstances of the particular case, those precautions proved adequate to achieve that result. Id.

¶12 Although we found, in the absence of any such precautions in Burnette, that the presumption was not overcome, id., some ten years later, in Carrillo v. People, we came to the opposite conclusion in a case in which an alternate was substituted for one of the sitting jurors after the jury had actually returned a verdict. 974 P.2d 478, 493 (Colo. 1999). Where, upon being polled, one of the jurors in Carrillo disagreed with the verdicts as announced by the foreman and, when it became apparent that he was hard of hearing and had not heard all of the testimony or discussion in deliberations, was replaced by the alternate, the trial court instructed the second, reconstituted jury to begin its deliberations anew, uninfluenced by any earlier discussions. Id. at 482–83. In

6

<u>Carrillo</u>, we found it unnecessary to resolve ambiguities in the rule and statute governing the dismissal of alternate jurors, both of which had been amended since <u>Burnette</u>, instead attributing to <u>Burnette</u> the proposition that in any event mid-deliberation replacement of a juror, which necessarily entails the alternate's presence, raises a presumption of prejudice to the defendant's right to a fair trial. <u>Id.</u> at 488. Notwithstanding acknowledging such a presumption, however, we found in <u>Carrillo</u>, unlike in <u>Burnette</u>, that the court's instruction to the "second jury" and "the circumstances of the case" were sufficient to overcome the presumption and uphold the guilty verdict. <u>Id.</u> at 492–93.

¶13 Although in <u>Boulies</u> we relied largely on federal authority concerning an entitlement to jury secrecy in concluding that the mere presence of an alternate during jury deliberations sufficiently impinges on a defendant's constitutional right to a jury trial to create a presumption of prejudice, in doing so we did not have the benefit of the Supreme Court's subsequent analysis in <u>United States v. Olano</u>, 507 U.S. 725 (1993). In <u>Olano</u>, decided after both <u>Boulies</u> and <u>Burnette</u>, the Supreme Court considered the question posed by the presence of an alternate in the jury room during deliberations and held that despite being a clear violation of Rule 24 of the Federal Rules of Criminal Procedure, which at that time required dismissal of alternates when the jury retired, the mere presence of an alternate should <u>not</u> be presumed prejudicial. <u>Id.</u> at 741. Acknowledging the very authority upon which we had earlier relied to the contrary, the Supreme Court held that "the primary if not exclusive purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence." <u>Id.</u> at 737–38.

7

Also accepting, without deciding, that there might conceivably be cases in which an improper influence, or "intrusion," on jury deliberations should be presumed prejudicial, the Supreme Court expressly found that the mere presence of an alternate—which it equated with the presence in the jury room of an unexamined book that had not been admitted into evidence—was not one of them. Id. at 739.

¶14 Rather, the Supreme Court explained that there were two ways in which the presence of alternate jurors during deliberations might be prejudicial: either because the alternate actually participated in the deliberations or because the alternate's presence exerted a chilling effect. Id. Where the defendants in that case had failed to object to the trial court's instruction permitting the alternate to be present without deliberating, much like Boulies, and where the defendants had made no specific showing that the alternate either participated in or chilled the jury's deliberations, or even requested a hearing to do so, the Supreme Court found it unnecessary to further consider precisely what kind of showing of outside influence would be required to establish prejudice. Id. at 739–40. Similarly, the Court expressly found it unnecessary to consider whether or how the government could have met its burden of showing an absence of prejudice had there been a timely objection. Id. at 741.

¶15 Finally, since the time of our prior analyses of the presence and participation of alternate jurors during deliberations, the jurisprudence of both this court and the United States Supreme Court concerning the nature and effect of errors committed in the trial process has undergone substantial refinement. As we indicated in People v. Novotny, with regard to the proper remedy for the erroneous denial of challenges to the

8

qualifications of prospective jurors, we have largely come to accept the structural error/trial error dichotomy developed by the Supreme Court, even with regard to matters other than those involving federal constitutional error. 2014 CO 18, ¶ 21, 320 P.3d 1194, 1201. It is now established that errors in the trial process can require reversal in the absence of some determination of their likely impact on the outcome of the particular proceedings at issue only if they can be categorized as structural error, a limited class of errors described by the Court as including errors concerning rights protecting some interest other than the defendant's interest in not being erroneously convicted; errors the effects of which are too hard to measure, in the sense of being necessarily unquantifiable and indeterminate; and errors that can be said to always result in fundamental unfairness. See Weaver v. Massachusetts, __ U.S. __, 137 S. Ct. 1899, 1908 (2017); United States v. Gonzalez-Lopez, 548 U.S. 140, 148, 150, 157 (2006).

## III.

¶16 Without regard for the merits of our ultimate decision to remand in Boulies, it is now apparent not only that our former classifications of error have undergone both substantial and terminological refinements over the intervening period, but also that our reliance on federal case law for the proposition that an error of constitutional magnitude is committed by the mere presence of an alternate juror in the jury room during deliberations has turned out to have been mistaken. See Olano, 507 U.S. at 739. Although the presence of an alternate during deliberations may violate a rule or statute governing jury trials, the Supreme Court made clear in Olano that the interest it had previously identified in jury privacy and secrecy is to protect the jury's deliberations

9

from "outside influence," or "intrusion," which, if actually established, must then be analyzed for prejudicial impact. Id. at 737–38. In Olano, the Court found only that the alternate's presence amounted to a violation of Rule 24, and it expressly held that unless the alternate either participated in the jury's deliberations or chilled deliberation by the regular jurors, his presence could not have been prejudicial. Id. at 737, 739.

¶17 Because the defense had not registered an objection when the trial court in Olano permitted the alternate to retire with the other jurors, the Supreme Court considered the effect of the error only as to the standard for plain error. Id. at 734. It therefore placed the burden of establishing prejudice on the defendant and, in the absence of any evidence of participation, found it unnecessary to address, other than by referencing its outside-influence jurisprudence, the effect actual participation by the alternate might have had on the question of prejudice. Id. In distinguishing harmless from plain error, however, the Court made clear that if the error had not been forfeited by failing to make contemporaneous objection, the burden of persuasion to demonstrate that no substantial right of the defendant had been adversely impacted by an outside influence on the jury would have fallen on the government. Id.

¶18 Apart from preserved federal constitutional error raised on direct appeal, the harmlessness of which must, according to Supreme Court fiat, be proved beyond a reasonable doubt by the government, see Brecht v. Abrahamson, 507 U.S. 619, 630 (1993); Chapman v. California, 386 U.S. 18, 24 (1967), we have often not placed on either party a specific burden to persuade an appellate court of harmfulness or harmlessness and have on occasion actually indicated that the defendant bore a burden to prove

10

harm or prejudice. With regard to a burden of persuasion, as distinguished from producing an adequate record, we have generally not acknowledged at all the possibility of equipoise in an appellate court's assessment of the likely impact of error on the proceeding in question. See, e.g., Novotny, ¶¶ 19–20, 320 P.3d at 1200–01; Hagos v. People, 2012 CO 63, ¶ 12, 288 P.3d 116, 119; Krutsinger v. People, 219 P.3d 1054, 1058 (Colo. 2009). In Olano, however, the Supreme Court engaged in a more nuanced interpretation of the language of Rule 52(a) of the Federal Rules of Criminal Procedure, which is identical to Crim. P. 52(a), emphasizing that the particular phraseology of the rule "precludes error correction only if the error 'does not affect substantial rights,'" 507 U.S. at 735 (quoting Fed. R. Crim. P. 52(a)) (emphasis added in Olano), leading it to conclude that the government must bear the burden of persuasion with regard to the harmlessness of all preserved error. Id. at 737, 741. For consistency in application by the appellate courts of this jurisdiction, and largely for the reasons we expressed in Novotny for continuing to conform the analysis of error in this jurisdiction to the structural/trial error dichotomy developed by the Supreme Court, we find it worthwhile in otherwise relying on the distinctions articulated in Olano to openly construe Crim. P. 52(a) in conformity with the Supreme Court's understanding of Fed. R. Crim. P. 52(a).

¶19 It is clear that in Olano the Supreme Court did not treat the presence of an alternate, or even an actual intrusion in the form of participation or some chilling conduct by the alternate, which would call for an analysis of prejudicial impact, as error defying harmless error analysis, or "structural error." 507 U.S. at 739. Similarly, the

11

Court made clear that the alternate's mere presence did not violate jury privacy or secrecy, and by limiting its analysis to the violation of Rule 24 and emphasizing the evaluation of intrusions for prejudicial impact, strongly implied that a violation of constitutional magnitude would occur only upon the demonstration of an impactful intrusion. Id. at 739–40; cf. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984) (holding that a deprivation of the constitutional right to effective assistance does not occur whenever representation is deficient but only where attorney deficiencies result in a reasonable probability of adversely affecting the outcome of the proceeding in question). In this case, however, whether the limited "intrusion" by the alternate is more properly addressed as constitutional error, requiring the People to prove beyond a reasonable doubt the absence of any reasonable possibility that the error might have contributed to the conviction, or non-constitutional error, requiring the People to prove only that the error did not substantially influence the verdict or affect the fairness of the trial proceedings, it was clearly harmless.

¶20 Whatever may be the continued vitality of our juror-substitution line of cases in light of these subsequent developments, we do not understand the considerations expressed in those cases to govern the harmfulness of an "intrusion" by an alternate upon the deliberations of a properly constituted jury. Like all errors in the trial process that do not amount to structural error, whether an intrusion or outside influence on jury deliberations should be disregarded as harmless must depend upon an evaluation of the likelihood that the outcome of the proceedings in question was adversely affected by the error. Novotny, ¶ 20, 320 P.3d at 1201. Although it is generally forbidden to

12

inquire into mental processes in connection with the jury's deliberations, it is not forbidden to inquire whether an outside influence was brought to bear upon any juror. CRE 606(b). As with other trial error, the relevant question concerning the harmlessness of any outside influence on the jury is whether there exists a reasonable possibility that the extraneous contact or influence would have adversely affected the verdict of a typical jury. See People v. Wadle, 97 P.3d 932, 935 (Colo. 2004); Wiser v. People, 732 P.2d 1139, 1142 (Colo. 1987).

¶21     In this case, the evidence relative to the only offense of which the defendant was convicted consisted of the discovery by police of a backpack containing the defendant's identification and twenty grams of methamphetamine, in a car the defendant had been seen driving, and the fact that the defendant, after being Mirandized, admitted that the illegal drugs were his. Aside from cross-examination about the extent of police investigation and a general denial, the defendant offered no defense or theory to dispute his possession of the illegal drugs. Although the alternate was inadvertently permitted to retire with the jury, he was recalled within some ten minutes and testified in response to questioning by both counsel and the court that while the jurors were getting settled he had acceded to the request of some, although without formal vote, to serve as foreperson; that a preliminary vote was taken to get the sense of the group; and that discussion of the charges was just beginning when he was recalled. Under these

circumstances, we are confident beyond a reasonable doubt that the error was harmless.[1]

## IV.

¶22 Because the evidence proving the defendant's guilt of the lesser offense of possession, the only offense of which he was convicted, was overwhelming and was in fact never seriously challenged, the district court's failure to recall the alternate for approximately ten minutes amounted, under the facts of this case, to harmless error. The judgment of the court of appeals is therefore affirmed.

**JUSTICE GABRIEL** concurs in the judgment, and **JUSTICE HOOD** and **JUSTICE HART** join in the concurrence in the judgment.

---

[1] We therefore need not address the question whether inquiring of the jury whether their verdicts were actually influenced by the alternate's participation comported with CRE 606.

JUSTICE GABRIEL, concurring in the judgment.

¶23 Today, the majority concludes that recent decisions of our court and the United States Supreme Court have established a harmless error or structural error dichotomy for cases like the present one and that the harmless error standard should apply here. In reaching this conclusion, the majority effectively overrules over three decades of precedent and applies an outcome-determinative, harmless error standard, notwithstanding the fact that the error in this case defies review under such a standard.

¶24 The majority's analysis appears to be based on a false dichotomy. Specifically, contrary to the majority's view that in a case like this, our review must either be for harmless error or structural error, both the United States Supreme Court and this court have recognized that in cases like the present one, which defy harmless error review, courts apply a third category of error, namely, one of presumed prejudice. See United States v. Olano, 507 U.S. 725, 735, 739 (1993); People v. Burnette, 775 P.2d 583, 584–85, 587–88 (Colo. 1989); People v. Boulies, 690 P.2d 1253, 1255–57 (Colo. 1984). Unlike the majority, I perceive nothing in Olano or People v. Novotny, 2014 CO 18, 320 P.3d 1194, that altered or is in any way in conflict with this settled principle.

¶25 Accordingly, I would continue to follow the principle set forth in Olano, Burnette, and Boulies and would conclude that when a case defies harmless error review, we should assess the error by applying a rebuttable presumption of prejudice.

¶26 Applying that analysis here, I agree with the majority's ultimate decision to affirm the judgment. In my view, the record in this case establishes that the presumed prejudice that arose from the trial court's inadvertently allowing an alternate juror to

1

deliberate for approximately ten minutes has been effectively rebutted. Accordingly, I perceive no basis for reversal.

## I. Analysis

¶27 I first address the presumption of prejudice standard as recognized by both the United States Supreme Court and this court. After concluding that the presumption of prejudice standard should govern this case, I apply that standard to the facts presented.

## A. The Presumed Prejudice Standard

¶28 Both the United States Supreme Court and this court have long recognized that the consequences of certain errors are "necessarily unquantifiable and indeterminate." See, e.g., Sullivan v. Louisiana, 508 U.S. 275, 282 (1993); People v. Dunlap, 975 P.2d 723, 737 (Colo. 1999).

¶29 Although such errors are ordinarily deemed structural errors and mandate reversal without a showing of prejudice, see Sullivan, 508 U.S. at 282; Dunlap, 975 P.2d at 737, both the Supreme Court and this court have recognized that certain categories of nonstructural trial errors may also tend to be unquantifiable and indeterminate and that in such cases, prejudice should be presumed, subject to rebuttal.

¶30 For example, in Olano, 507 U.S. at 729, the Supreme Court considered a case in which an alternate juror was permitted to remain in the jury room during the jurors' deliberations. Although the Court ultimately concluded that the error in allowing the juror to do so did not constitute plain error, the Court recognized the existence of a category of errors "that should be presumed prejudicial if the defendant cannot make a specific showing of prejudice." Id. at 735, 741; see also id. at 739 ("There may be cases

2

where an intrusion [into the jury's ordinary processes] should be presumed prejudicial."); Patton v. Yount, 467 U.S. 1025, 1031 (1984) (noting that "adverse pretrial publicity can create such a presumption of prejudice in a community that the jurors' claims that they can be impartial should not be believed").

¶31 Similarly, in Boulies, 690 P.2d at 1255–57, this court considered a case in which an alternate juror was allegedly permitted to remain in the jury room and to observe the jury's deliberations. We there stated, "[W]e view the presence of an alternate juror during the jury's deliberations as sufficiently impinging upon the defendant's constitutional right to a jury trial to create a presumption of prejudice that, if not rebutted, requires reversal." Id. at 1255–56. Unlike the majority, see maj. op. ¶ 13–16, I do not believe that our rationale in Boulies conflicts with the Supreme Court's later analysis in Olano. To the contrary, both cases recognized a rebuttable presumption of prejudice in cases like the present one, in which, through no fault of its own, a party claiming error cannot show prejudice. See Olano, 507 U.S. at 735, 741; Boulies, 690 P.2d at 1255–56; see also Burnette, 775 P.2d at 590 (following Boulies and noting that the presumption can be overcome by a showing that "the trial court took extraordinary precautions to ensure that the defendant would not be prejudiced and that under the circumstances of the case, the precautions were adequate to achieve that result").

¶32 In my view, we should continue to recognize such a rebuttable presumption standard in cases in which a nonstructural trial error defies harmless error review. By not doing so, we are creating an analytical regime that will virtually always result in

3

our recognizing a wrong while simultaneously denying an aggrieved party any remedy for that wrong.

¶33    In reaching this conclusion, I respectfully disagree with the majority's suggestion that the Court in Olano expressly ruled that the presumed prejudice standard does not apply to cases involving the improper presence of an alternate juror in the jury room. See maj. op. ¶¶ 13–16. In my view, the Olano Court's statements that it need not and would not presume prejudice in the case before it, Olano, 507 U.S. at 737, 740, must be read in context. In Olano, the trial court allowed the alternate jurors to sit in the jury room but instructed them that they were not to participate in the deliberations. Id. at 740. Based on the settled assumption that jurors follow the court's instructions, the Court was unwilling to presume prejudice. See id. at 740–41; see also Hall v. Zenk, 692 F.3d 793, 801 (7th Cir. 2012) (noting that the Olano Court had engaged in a fact-based analysis, reasoning that a presumption of prejudice was not appropriate, particularly given the trial court's instruction that the alternate jurors should not participate in the jury's deliberations); State v. Berrios, 129 A.3d 696, 706 (Conn. 2016) (noting that in Olano, the Court perceived no evidence that the alternate jurors chilled the jury's deliberations or improperly participated therein, particularly given the presumption that the alternates would have followed the judge's instruction not to participate).

¶34    Unlike the majority, I do not believe that the Olano Court's ultimate conclusion would necessarily apply in every case involving alternate jurors' unauthorized presence in the jury room. In Olano, the Court had some information, namely, an express jury

4

instruction, on which it could rely to assume a lack of participation by the alternates. It is in this context—specifically, the presence of alternate jurors who had been instructed not to participate in the jury's deliberations—that the Court stated that the mere presence of alternate jurors was insufficient to warrant a presumption of prejudice in the case before it. Olano, 507 U.S. at 741.

¶35     Moreover, Olano itself observed that the presence of alternate jurors might be prejudicial if the alternates actually participated in the deliberations, either verbally or through body language. See id. Accordingly, I perceive nothing in Olano that can be read as having overturned the presumption of prejudice in all alternate juror cases, and other jurisdictions have so held. See, e.g., Hall, 692 F.3d at 801 (recognizing that after Olano, although not all suggestions of potential intrusion on a jury deserve a presumption of prejudice, some still do); Barnes v. Joyner, 751 F.3d 229, 243 (4th Cir. 2014) (noting that the Fourth Circuit continued to apply the presumption after Olano and that the presumption was clearly established law in that circuit); Manning v. Huffman, 269 F.3d 720, 726 (6th Cir. 2001) (noting that the Olano Court made it "quite clear" that in some situations a presumption of prejudice is appropriate and concluding that an alternate juror's participation in deliberations was sufficient to show prejudice); Berrios, 129 A.3d at 697 (concluding that the presumption of prejudice remains good law in cases of external interference with the jury's deliberative process via private communication, contact, or juror tampering but concluding that the state had rebutted the presumption in the case before it).

¶36 In the present case, as well as in <u>Johnson v. Schonlaw</u>, 2018 CO 73, ___ P.3d ___, which we are also deciding today, the alternate jurors were given no instruction like the one that the trial court provided in <u>Olano</u>. Nor, given the restrictions of CRE 606(b), would the party challenging the alternate jurors' presence in the jury room likely be able to ask the other jurors about the alternates' participation in deliberations, making proof of prejudice difficult, if not impossible.

¶37 Accordingly, in my view, <u>Olano</u>'s presumed prejudice standard should continue to apply in cases in which nonstructural trial errors defy a showing of prejudice.

¶38 I likewise am unpersuaded by the majority's suggestion that cases like <u>Novotny</u> somehow altered the analysis in <u>Boulies</u> and its progeny. <u>See</u> maj. op. ¶ 15. <u>Novotny</u> did not expressly do so. Rather, it overruled prior cases that had mandated automatic reversals when challenges for cause were erroneously denied and the aggrieved party had exercised all of his or her peremptory challenges. <u>See</u> <u>Novotny</u>, ¶¶ 2, 27, 320 P.3d at 1196, 1203. As noted above, however, <u>Boulies</u> did not establish an automatic reversal rule, and <u>Novotny</u> did not address the issue of presumed prejudice from nonstructural errors defying harmless error review.

¶39 Moreover, I perceive nothing in <u>Novotny</u> that is inconsistent with <u>Boulies</u>. To the contrary, as noted above, both the United States Supreme Court and this court have recognized that the outcome-determinative, harmless error standard and the rebuttable presumption of prejudice are different standards that apply to different types of cases. <u>See</u> <u>Olano</u>, 507 U.S. at 735, 739; <u>Burnette</u>, 775 P.2d at 590; <u>Boulies</u>, 690 P.2d at 1255–57. If a particular error affords a party an opportunity to establish harmless error, then the

6

outcome-determinative, harmless error standard set forth in <u>Novotny</u> should apply. If the error is of the type that by its nature defies harmless error review, then the presumption of prejudice standard should apply. <u>See</u> <u>Olano</u>, 507 U.S. at 735, 739; <u>Burnette</u>, 775 P.2d at 590; <u>Boulies</u>, 690 P.2d at 1255–57.

¶40 Accordingly, and given our consistent recognition that stare decisis principles require us to follow a rule of law established in our prior cases unless sound reasons exist for departing therefrom, <u>see</u> <u>People v. Kutlak</u>, 2016 CO 1, ¶ 18, 364 P.3d 199, 205, I perceive no reason to depart from <u>Boulies</u> and its progeny.

¶41 Because the parties appear to agree that the trial court erred in allowing, albeit inadvertently, the alternate juror to participate in the jury's deliberations, the question for me becomes whether the presumed prejudice that arose from this error has been rebutted. I turn to that question next.

### B. Whether the Presumption Has Been Rebutted

¶42 In <u>Burnette</u>, 775 P.2d at 590, we noted that the presumption of prejudice that arises from the improper involvement of an alternate juror in jury deliberations can be overcome by a showing that "the trial court took extraordinary precautions to ensure that the defendant would not be prejudiced and that under the circumstances of the case, the precautions were adequate to achieve that result."

¶43 Finally, after the jurors reached their verdict, the court asked each juror to confirm that his or her verdict had not been influenced by the alternate. Each juror did so. Although I recognize that CRE 606(b)'s limits on inquiry into juror deliberations require that courts proceed cautiously in making inquiries of this nature, in my view,

7

the trial court's limited inquiry and other actions here were appropriate and reflected precisely the kind of extraordinary precautions that we have concluded are necessary to rebut the presumption of prejudice in a case like this. Indeed, I cannot conceive of anything more that the trial court could realistically have done here to eliminate any possible prejudice.

¶44 For these reasons, I believe that the presumed prejudice that arose from the brief involvement of the alternate juror in the jury's deliberations was overcome in this case. I would therefore affirm the judgment below, albeit on grounds different from those on which the majority relies.

¶45 Here, just moments after the jurors retired to deliberate, the trial court informed the parties that an alternate juror had inadvertently gone into the jury room. The court immediately removed that juror and questioned him in a general way as to the involvement that he had had in the deliberations. Although the alternate advised that he had been selected as the foreperson of the jury, he noted that prior to the time that he had been removed from the room, two jurors had used the restroom and the jurors had done nothing more than take a preliminary vote, and not even on all of the charged counts. The jurors had just begun to discuss the elements of the charged crimes when the alternate was removed from the jury room. The total time that the alternate participated in the jury's deliberations appears to have been approximately ten minutes.

¶46 The court discharged the alternate, advised the jury to select a new foreperson, instructed the jurors to continue their deliberations, and instructed the remaining jurors that they were not to be influenced by anything that the alternate juror had said or

8

done.  Finally, after the jurors reached their verdict, the court asked each juror to confirm that his or her verdict had not been influenced by the alternate.  Each juror did so.  Although I recognize that CRE 606(b)'s limits on inquiry into juror deliberations require that courts proceed cautiously in making inquiries of this nature, in my view, the trial court's limited inquiry and other actions here were appropriate and reflected precisely the kind of extraordinary precautions that we have concluded are necessary to rebut the presumption of prejudice in a case like this.  Indeed, I cannot conceive of anything more that the trial court could realistically have done here to eliminate any possible prejudice.

## II.  Conclusion

¶47      For these reasons, I believe that the presumed prejudice that arose from the brief involvement of the alternate juror in the jury's deliberations was overcome in this case. I would therefore affirm the judgment below, albeit on grounds different from those on which the majority relies.

¶48      Accordingly, I respectfully concur in the majority's judgment only.

I am authorized to state that JUSTICE HOOD and JUSTICE HART join in this concurrence.

9